Dennis J. HAUGH, Administrator of the Estate of Terry L. Hines, Deceased, Appellant

v.

CITY OF LOUISVILLE; Louisville–Jefferson County Metro Government; Larry Wayne Kaufman, Jr.; Oscar L. Graas; Donald Burbrink; Michael Perry; and Jay Pierce, Appellees.

No. 2006–CA–002565–MR.

Court of Appeals of Kentucky.

Dec. 7, 2007.

Marshall F. Kaufman, III, Kerstin Schuhmann, Kaufman, Stigger & Hughes, PLLC, Louisville, KY, for appellant.

Gary E. Siemens, Benson, Byrne, Risch, Siemens & Lange, Louisville, KY, Argument for Appellee Officer Larry Wayne Kaufman, Jr.

Mitzi D. Wyrick, Jennifer Starr, Wyatt, Tarrant & Combs, LLP, Frank Chuppe, Louisville, KY, for appellee Captain Donald Burbrink.

Lisa A. Schweickart, Assistant County Attorney, Louisville, KY, for appellees City of Louisville, Louisville–Jefferson County Metro Government, Oscar L. Graas, Jr., Michael Perry, and Jay Pierce.

Before COMBS, Chief Judge; LAMBERT, Judge; KNOPF,[1] Senior Judge.

## OPINION

LAMBERT, Judge.

Terry L. Hines's estate appeals the circuit court's grant of summary judgment against its wrongful-death claim. For the reasons stated herein, we affirm the grant of summary judgment.

### Background

Several Louisville City police officers went to the decedent Terry L. Hines's residence to arrest him pursuant to bench warrants relating to several felony and

---

1. Senior Judge William L. Knopf, sitting as Special Judge by Assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

misdemeanor charges. Hines refused to grant the officers entry and armed himself with a butcher knife and a frying pan. Two officers nevertheless entered the residence through a rear door and confronted Hines. Hines disregarded the officers' repeated commands to disarm himself and to surrender. After Hines walked towards the officers, the officers shot Hines with copious amounts of pepper spray, but he was unfazed. The officers then retreated from Hines's residence.

In response to Hines's initial show of resistance to lawful arrest, the Louisville City Police Department marshaled a Negotiation Team, an Officer–Canine Team, and a SWAT team to the scene. After several hours of attempting to persuade Hines to surrender, the Negotiation Team gave up its efforts as futile. At that point, the SWAT and Officer–Canine Teams decided to rapidly storm Hines's residence using nonlethal force to effectuate a quick arrest. The estate contends that, in making this decision, the Captain of the SWAT team failed to take into account Hines's paranoid schizophrenia, a condition that the Captain maintains he did not know about.

In any event, the SWAT team broke all the windows of Hines's residence to distract him, and then entered his residence from the rear, firing several nonlethal bean-bag rounds from a twelve-gauge shotgun. Despite being struck by the bean-bag rounds, Hines barely flinched. More bean-bag rounds were then fired, and the Canine Officer released his police dog to bring Hines to the ground. The bean-bag rounds again proved ineffective, and Hines stabbed the dog with the butcher knife he had been wielding during the entire standoff.

After Hines stabbed the police dog, he then attacked the canine officer, who had followed the dog to control and assist it.

The eyewitness accounts uniformly indicate that Hines attempted to stab the officer with his butcher knife. In response, one of the SWAT officers fired more bean-bag rounds at Hines, targeting his head and chest, and another shot Hines with two live rounds from a firearm. The SWAT team also used OC gas and four canisters of tear gas in its attempts to both protect the canine officer and subdue Hines. Despite all this use of force, Hines still did not surrender or relinquish his butcher knife or show indications of having suffered serious detrimental effects.

Ultimately, Hines was subdued and arrested when a member of the SWAT team literally shot the butcher knife from his hand with a bean-bag round, and then the remaining other officers overpowered Hines with the spray from a fire hose. Only after much hand-to-hand force and physical struggle did four officers acting in concert manage to wrestle Hines to the ground and handcuff him. The arresting officers then immediately took Hines to a local hospital. Several weeks later, Hines died while still in the hospital.

The medical depositions indicate that he died from a "multisystem organ failure" arising from multiple injuries incurred during his arrest. In particular, the medical evidence indicates that Hines had been twice wounded by gun fire and his heart had been bruised as a result of one or more bean-bag rounds striking his chest. Following Hines's death, his estate brought this wrongful-death action, which the circuit court has dismissed by way of summary judgment.

### Issue

The estate does not dispute that Hines was arrested pursuant to a valid bench warrant or that the arresting officers did not have a duty to arrest him. Rather, as correctly noted by the circuit court, the primary thrust of its complaint is that the

officers used excessive or unnecessary force to effectuate Hines's arrest. Moreover, the estate also contends that the Louisville–Jefferson County Metro Government, which is the legal successor to the City of Louisville, is vicariously liable for the officers' negligence or use of excessive force.

## Legal Standards

■ Under Kentucky statutory law, a peace officer is not allowed to use unnecessary force or violence in making an arrest. KRS 431.025(3). But, he is entitled to use such force as is necessary, or reasonably appears so, to take a suspect into custody. *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky.1973). Statutory law is also clear that all persons have a legal duty to surrender to lawful arrest. *See Lawson v. Burnett*, 471 S.W.2d 726, 729 (Ky.1971). Constitutional search-and-seizure jurisprudence provides similar substantive results. Indeed, the United States Supreme Court has held that, under the Fourth Amendment, the reasonableness of any particular use of force in effecting an arrest must be judged from the perspective of a reasonable officer at the scene, not with the perfect vision of hindsight. *See, e.g., Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

■ To the extent the estate is arguing that the commanding officers in this case made an improper decision to storm Hines's residence, we note that the law affords qualified immunity to the discretionary acts of peace officers performed in an official capacity, thereby shielding them "from [ ] liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 521–523 (Ky.2001). To show that a peace officer acted in bad faith when making an on-the-spot judgment call, the complainant must demonstrate that the officer *"knew or reasonably should have known* that the

action he took within his sphere of official responsibility would violate" the complainant's rights or that the officer "took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury. . . ." *Yanero*, 65 S.W.3d at 523.

■ Finally, we note that summary judgment is appropriate when no genuine issues of material fact exist, and the movant is entitled to judgment under the facts as a matter of law. *See* CR 56; *see also Steelvest, Inc. v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476, 480 (1991). Summary judgment is only proper when it appears impossible in a practical sense for the respondent to prevail at trial. In response to a motion for summary judgment, the respondent must present "at least some affirmative evidence showing the existence of a genuine issue of material fact . . ." *City of Florence v. Chipman*, 38 S.W.3d 387, 390 (Ky.2001). A party's subjective beliefs about the nature of the evidence is not the sort of affirmative proof required to avoid summary judgment. *See Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky.1990).

## Analysis

### I.

■ We affirm the circuit court's determination that the peace officers' decision to storm Hines's residence and to use non-lethal force to quickly subdue him is entitled to qualified immunity, because, at minimum, it was a good faith judgment call made in legally uncertain circumstances. Although the estate's retained expert testified in his deposition that the arresting officers could have chosen to wait Hines out, essentially employing a longer-term blockade or siege-style strategy, he also indicated that the decision to storm Hines's residence with nonlethal force was an action within police discretion. In light of the testimony of the estate's own re-

tained expert, we fail to see any possible material issue of fact defeating the arresting officers' claim to qualified immunity. Clearly, the officers acted within the scope of their official discretion.

Moreover, we concluded that the objective reasonableness of the decision to bring the standoff to a quick conclusion is compelling considering: (1) that two hours of attempted negotiations had failed to persuade Hines to surrender; (2) that Hines was armed with a deadly weapon; and (3) that one of the outstanding charges against Hines was for assaulting a police officer. Indeed, the arresting officers' determined that the longer Hines was in possession of a deadly weapon and not in custody, the greater the chance of a disastrous outcome involving harm or death to a peace officer or bystander.

█ We also conclude that the dispute as to whether the Captain of the SWAT team knew about Hines's paranoid schizophrenia is immaterial in this case. Even assuming that the Captain was aware of Hines's mental condition, the estate has failed to explain how this fact should have changed the arresting SWAT team's decision to storm the residence. Mental illness does not exempt a person from the use of reasonable force by the police. *See,* e.g., *Untalan v. City of Lorain,* 430 F.3d 312, 313 (6th Cir.2005). And, Hines's unbalanced mental condition would only seem to add to the reasonableness of the decision to end the standoff quickly, as a longer, siege-style standoff could only have increased the chances of Hines's harming himself, a peace officer, or an innocent bystander. Indeed, the estate has failed to marshal non-speculative evidence, or sound arguments that could prove the contrary at trial.

## II.

█ We also hold that once the officers began to storm his residence, the uncontroverted evidence indicates that Hines himself was solely responsible for his demise in that: (1) he refused to surrender despite repeated orders to do so despite a substantial mustering of nonlethal force; and (2) that he attacked one of the arresting officers with a deadly weapon, thereby forcing the other officers to use lethal force. The proof adduced in discovery uniformly indicates that the arresting officers acted with measured and proportional force throughout the incident, using only the reasonable force necessary to effectuate the arrest and protect the safety of the arresting officers against Hines's armed resistance. Consequently, we hold that the circuit court correctly granted summary judgment to the officers on the estate's excessive-force and constitutional-rights claims.

## III.

█ Because we find no primary liability on the part of the arresting officers, we agree with the circuit court's holding that the Louisville–Jefferson County Metro Government, which is the legal successor of the City of Louisville, likewise cannot be held vicariously liable for Hines's death. Indeed, vicarious liability is not possible without primary liability. *See City of Louisville v. Bergel,* 610 S.W.2d 292, 293 (Ky.1980). As discussed above, we have affirmed the circuit court's adverse grant of summary judgment on the estate's primary liability claims.

## Conclusion

For the foregoing reasons, we affirm the judgment of the Jefferson Circuit Court in this action.

ALL CONCUR.