RENDERED: MARCH 26, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0637-MR

DEMETRIUS D. NORTHERN-ALLISON

APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE MITCH PERRY, JUDGE
ACTION NO. 18-CI-001963

JOHN SEYMOUR; MARK
GRANHOLM; DAVID LEDBETTER;
AND WILLIAM PEARSON

APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: GOODWINE, MAZE, AND MCNEILL, JUDGES.

GOODWINE, JUDGE: Demetrius D. Northern-Allison ("Northern-Allison") filed

suit against several Louisville Metro Police Department ("LMPD") officers in their

individual and official capacities for injuries sustained during the execution of a

valid search warrant. The officers moved for summary judgment, which the

Jefferson Circuit Court granted. After careful review, we reverse and remand.

On April 4, 2018, Northern-Allison filed suit against each LMPD officer at the scene during the execution of a search warrant, alleging excessive force, assault and battery, negligence, gross negligence, and negligence *per se* based on violations of KRS[1] 95.015, KRS 503.090, and KRS 431.025.  On November 26, 2019, the officers filed a joint motion for summary judgment, and Northern-Allison filed a response on December 16, 2019.  On February 4, 2020, the circuit court entered an agreed order, dismissing with prejudice several defendants, leaving Appellees John Seymour, Mark Granholm, David Ledbetter, and William Pearson as remaining defendants.

On February 19, 2020, the circuit court heard the officers' motion for summary judgment.  During the hearing, Northern-Allison agreed to dismiss claims against the four remaining officers in their official capacities and to dismiss all claims except excessive force, civil battery, and civil assault.

The parties presented their version of events in both written and oral arguments.[2]  On April 1, 2017, members of the LMPD SWAT unit assisted LMPD Narcotics Detective Richard Wiedo in the execution of a high-risk search warrant at a residence in Louisville.  The officers contend the search warrant was properly

---

[1] Kentucky Revised Statutes.

[2] Neither Northern-Allison nor the remaining officers testified during the hearing.  Instead, counsel made arguments based on the deposition testimony and affidavits of the parties.  The officers point out that Northern-Allison's version of events is based on his deposition testimony, but the relevant portions were not part of the certified record on appeal.

executed and characterize the events as follows. When officers did not receive a response, they breached the exterior security door, shattering the glass of the exterior door and partially knocking open the interior door. Officers saw Northern-Allison, a resident and potential target of the warrant, in the doorway. However, Northern-Allison did not let the officers in, failed to comply with their commands, and slammed the door shut. When the door was finally opened, officers observed Northern-Allison with his two children, holding at least one of them in front of him and slamming the door shut again. During this time, Northern-Allison moved in and out of the officers' vision, destroying evidence by attempting to flush cocaine down a toilet.

The officers ultimately entered the home, and Northern-Allison initially complied with commands to get down on the ground. Then, he turned from lying face down on the ground to lying on his back, facing up. He began to resist the officers' attempts to arrest and secure him by failing to comply with commands and refusing to place his hands behind his back.

In response, Officer Seymour and Officer Granholm "delivered several 'hammer fist strikes'" to Northern-Allison, attempting to gain his compliance and to ensure everyone's safety. Record at 308. Northern-Allison continued to be non-compliant even after officers secured his hands behind him. Once secured, officers escorted Northern-Allison out of the residence under his

own power until he reached the front door. Appearing to feign severe injury, he fell to the ground into shards of glass from the broken security door.

Northern-Allison disagreed with the officers' characterization of the events and presented his own version.[3] Northern-Allison alleged he was at home with his children when the SWAT team attempted to breach his front door. Because his children were present, he asked them to stop. He attempted to secure his children in a room away from the door and admits he attempted to flush cocaine and conceal evidence after securing his children. Northern-Allison alleged he then opened the door and was struck in the face with what he believed to be the butt of a gun after complying with the officers' command to raise his hands. He testified during his deposition that the force of the blow caused him to fall onto the broken glass from the exterior door. Northern-Allison alleged several officers began stepping on, choking, kicking, and hitting him to the point that he blacked out.

Following his arrest, Northern-Allison was charged with and pled guilty to tampering with physical evidence, trafficking in a controlled substance, and resisting arrest. The parties did not dispute that Northern-Allison suffered an orbital bone fracture and several lacerations and attempted to flush cocaine down the toilet during the execution of the warrant.

---

[3] *See* footnote 2, *supra*.

On March 16, 2020, the circuit court granted the officers' motion for summary judgment, relying on the United States Supreme Court's ruling in *Heck v. Humprey*, 512 U.S. 477 (1994). Northern-Allison's subsequent motion to alter, amend, or vacate was denied. This appeal followed.

On appeal, Northern-Allison argues: (1) the circuit court erred in basing its decision on case law that only applies to 42 U.S.C.[4] § 1983 actions; (2) the officers' intentional acts are not protected by the doctrine of qualified immunity; and (3) if qualified immunity applies, the officers acted in bad faith and are not protected by the doctrine. We review *de novo* a trial court's ruling on a motion for summary judgment. *Ashland Hospital Corporation v. Lewis*, 581 S.W.3d 572, 577 (Ky. 2019).

First, Northern-Allison argues the circuit court erred in applying *Heck v. Humphrey*, 512 U.S. 477, and *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005), in finding his plea of guilty to resisting arrest barred his civil claims. In *Heck* and *Cummings*, both plaintiffs filed civil rights actions under 42 U.S.C. § 1983. Both cases only allow recovery under § 1983 when a plaintiff proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of

---

[4] United States Code.

habeas corpus[.]" *Heck*, 512 U.S. at 487. The circuit court erred in granting summary judgment based on the application of these cases because Northern-Allison filed a "claim under state law, not a § 1983 claim based on an outstanding criminal judgment. Thus, *Heck* has no application here." *Dunn v. Felty*, 226 S.W.3d 68, 73 (Ky. 2007).

Next, Northern-Allison argues the officers were not entitled to qualified immunity because their actions were intentional, and they acted in bad faith. Although the officers argued they were entitled to qualified immunity in their motion for summary judgment, and Northern-Allison objected, the circuit court did not address qualified immunity in its order granting summary judgment.

"'Official immunity' is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed." *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001) (citation omitted). When an officer is sued in his representative capacity, the officer's "actions are afforded the same immunity, if any, to which the agency, itself, would be entitled[.]" *Id.* at 522. However, when sued in his individual capacity, "public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Id.* (citation omitted).

A public official sued in his individual capacity is entitled to qualified immunity for his negligent acts when he performs: "(1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . ; (2) in good faith; and (3) within the scope of [his] authority." *Id.* (citations omitted). However, "an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (citation omitted).

As discussed above, government officials, sued in their individual capacities, are entitled to qualified immunity when they perform a discretionary act. Despite Northern-Allison's argument that we should distinguish between intentional and negligent acts, our analysis focuses solely on the distinction between ministerial and discretionary acts. "[T]he law affords qualified immunity to the discretionary acts of peace officers performed in an official capacity, thereby shielding them 'from [ ] liability for good faith judgment calls made in a legally uncertain environment.'" *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. App. 2007) (quoting *Yanero*, 65 S.W.3d at 521-23). The discretionary category encompasses "the kind of discretion exercised at the operational level rather than

-7-

exclusively at the policy-making or planning level." *Marson v. Thomason*, 438

S.W.3d 292 (Ky. 2014) (quoting 63C AM. JUR. 2D *Public Officers and*

*Employees* § 318 (updated through Feb. 2014)).

As discussed above, the officers are entitled to qualified immunity if

they performed: (1) a discretionary act, (2) in good faith, and (3) within the scope

of their authority. *Yanero*, 65 S.W.2d at 522. First, there is no dispute that the

officers acted within the scope of their authority. Second, we must consider

whether the officers' use of force in arresting Northern-Allison while executing a

search warrant was discretionary or ministerial. Executing a search warrant is a

job requirement for police officers. However, the decision "to use nonlethal force

to quickly subdue" a subject is an action within police discretion. *Haugh*, 242

S.W.3d at 686. The officers were required to use their discretion in using force

when Northern-Allison failed to comply with their commands and attempted to

destroy evidence. Thus, the officers clearly performed a discretionary act in

applying force during Northern-Allison's arrest.

The crux of Northern-Allison's argument is that the officers acted in

bad faith by using excessive force during his arrest. The "good faith" element of

qualified immunity has "both an objective and subjective aspect." *Yanero*, 65

S.W.3d at 523.

> The objective element involves a presumptive knowledge
> of and respect for "basic, unquestioned constitutional

-8-

rights." *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). The subjective component refers to "permissible intentions." *Ibid.* Characteristically the Court has defined these elements by identifying the circumstances in which qualified immunity would *not* be available. Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official "*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury. . . ." *Ibid*. (emphasis added).

*Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).

Because the circuit court did not address the parties' arguments regarding qualified immunity, we must reverse the circuit court's judgment. The circuit court is in the best position to weigh the credibility of the parties' testimony and what weight should be given thereto. On remand, the circuit court must determine whether the officers acted in good faith in using force during Northern-Allison's arrest. If this element is satisfied, then the officers, in their individual capacities, are entitled to qualified immunity.

For the foregoing reasons, we reverse the order of the Jefferson Circuit Court and remand the case with instructions to determine whether the officers are entitled to qualified official immunity under *Yanero*.

ALL CONCUR.

BRIEF FOR APPELLANT:

Lonita Baker
Sam Aguiar
Louisville, Kentucky

BRIEF FOR APPELLEES:

Michael J. O'Connell
Jefferson County Attorney

Roy C. Denny
Assistant Jefferson County Attorney
Louisville, Kentucky