RENDERED: JUNE 14, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1511-MR

MARSHALL YOUNG                                 APPELLANT

            APPEAL FROM JEFFERSON CIRCUIT COURT
v.         HONORABLE SUSAN SCHULTZ GIBSON, JUDGE
            ACTION NO. 19-CI-005743

HAIER U.S. APPLIANCE SOLUTIONS, INC.,
D/B/A GE APPLIANCES                           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: A. JONES, KAREM, AND LAMBERT, JUDGES.

JONES, A., JUDGE: Marshall Young appeals from the Jefferson Circuit Court's summary judgment entered in favor of Haier U.S. Appliance Solutions, Inc., d/b/a GE Appliances ("GEA"), which dismissed Young's claims for disability discrimination and retaliation. After a thorough review, we affirm.

# I. BACKGROUND

GEA is a manufacturer of home appliances at its facility in Louisville. Except for skilled labor, all entry-level employees at GEA begin in what GEA refers to as the "Park Pool." GEA employs its Park Pool workers as part of a progressive assembly line, in which they may be called upon to perform any one of approximately 1,300 different assignments as needed. All Park Pool workers rotate between these various production assignments, which may include up to four rotations in a single eight-hour shift. Additionally, Park Pool workers are subject to a collective bargaining agreement between GEA and the local union, under which Park Pool workers are not permitted to bid on the permanent, non-rotating job assignments when they become available. Instead, such jobs are assigned to Park Pool workers based on seniority, as required under the collective bargaining agreement. From that point forward, the worker is said to "own" the position and is no longer considered a member of the Park Pool.

The Park Pool position is highly physical in nature. Workers are required to be able to bend, stoop, crouch, walk, reach, and lift with varying degrees of frequency, depending on the assignment. Because of the physical intensity of the Park Pool position, GEA worked with ergonomists to create a Functional Job Profile outlining the physical demands necessary for Park Pool employees. Most relevant to this case, the position requires "frequent" "reach[ing]

at or below shoulder level" and "reach[ing] above shoulder level." The Functional Job Profile defines "frequent" as performing the stated activity up to five hours out of an eight-hour workday. (Record (R.) at 247.) The Park Pool job posting reiterates this physical requirement, informing applicants that the position involves frequent reaching and lifting. (R. at 248.)

In 2014, Young worked as an electronic maintenance technician employed by Adecco Technical, a temporary staffing agency, at GEA's appliance park. Later, in September 2015, Young applied for a permanent position in GEA's Park Pool. After Young passed the written examination and his personal interview, he received an offer of employment conditioned on passing a background check, a medical examination, and a physical screening called the "Fit For Work" test. Fit For Work asks the candidate to mimic several different types of movements which would be required of a Park Pool employee to perform tasks safely. Young took the Fit For Work screening on October 17, 2015, and he completed three of the five tests without issue. However, Young failed to meet requirements for two separate tests involving posture changes, reaching, and the ability to connect or disconnect wiring harnesses. The physical therapist noted that Young had very limited range of motion in his left shoulder and upper arm. The physical therapist also noted that Young "frequently stopped to shake out [his] arm

-3-

due to only using the one arm," as he could not use his upper left arm to complete the function.  (R. at 223.)

In his medical questionnaire, Young indicated that he had a birth-related injury known as Erb's palsy, which is "a nerve condition in the shoulder and arm that results in weakness or loss of muscle function."[1]  Despite this condition, however, Young indicated on his questionnaire that he had no physical limitations, and that he did not require an accommodation for either the Fit For Work test or the Park Pool position.  (R. at 206-07.)  The Fit For Work evaluation summary regarding Young's performance issued the following recommendation:

> We offer you the following opinion concerning the individual's present abilities to safely and successfully perform the essential functions of the position for which he was tested:
>
> **NOT CAPABLE – IMPAIRMENT**:  Not Capable of performing the essential functions of the position sought, but the candidate ***does have*** a present or past medical condition or impairment that we believe is contributing to their functional deficit.  Such a result may trigger a reasonable accommodation consideration by the employer under the ADAAA or similar federal, state or local laws.

---

[1]  *Erb's Palsy*, THE CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/21986-erbs-palsy (last visited May 17, 2024).  Specifically, this condition results from a brachial plexus injury which may occur during difficult childbirth cases.  The Cleveland Clinic states that "Erb's palsy occurs in 0.9 to 2.6 per 1,000 live births or nearly 12,000 cases per year."  *Id*.

(R. at 217.) The evaluation summary also noted that Young reported his Erb's palsy, and this condition "contributed to his difficulty with safely lifting and controlling the required weight or performing the essential functions." *Id*. Whether by accident or design, Young apparently did not receive a copy of his results from the Fit For Work evaluation.

Young's medical records and his Fit For Work evaluation were provided to GEA's contracted nurse case manager, Jessica Butcher. Her role was to review Young's records to determine what restrictions Young might require in order to perform the essential functions necessary to work in the Park Pool. Nurse Butcher communicated extensively with Young via email and with his physicians over the next few months. First, on October 26, 2015, less than two weeks after his Fit For Work screening, Nurse Butcher informed Young that she was "waiting on a determination from medical." Young responded with his own email, stating, "I passed every part of the physical. . . . I'm not understanding what medical is trying to determine?" (R. at 225.)

On November 4, 2015, GEA requested a release of Young's medical records, and Young immediately complied. Nurse Butcher noticed a problem with the records provided by Young's physician, Dr. Amin, in that the form did not provide sufficient information regarding Young's impairment. In a form titled "medical new hire clearance," Dr. Amin left the entry blank in the location where

the form asked what restrictions would allow Young to perform the essential job functions. Then, on the next line asking for a basis for the restrictions, Dr. Amin wrote, "[patient] has limited [range of motion] of [left] shoulder." (R. at 232.) Nurse Butcher noted that the information provided by Dr. Amin was inadequate and asked for further information. Young, clearly frustrated, emailed Nurse Butcher to ask, "what additional information could they possibly need? I provided everything they have asked for." On December 23, 2015, Nurse Butcher sent a fax to Dr. Amin which asked for Young's restrictions based on the attached Functional Job Profile and the Park Pool job posting.

Nurse Butcher and Young continued to exchange emails regarding his current status, as they waited for a response from Dr. Amin. Nurse Butcher suggested Young could see another doctor in an attempt to expedite the process. Young then made an appointment with Dr. Tien, which took place on February 2, 2016. Dr. Tien physically examined Young, but he sent the form with a single vague restriction that Young should "avoid overhead activity." Unfortunately, as with Dr. Amin, Dr. Tien had also neglected providing Nurse Butcher with the physical examination findings forming the basis for this restriction.

On February 4, 2016, Nurse Butcher and Young once again exchanged emails about Young's medical clearance form. Nurse Butcher told Young that she needed a copy of the physical examination from Dr. Tien's office.

Young was once again frustrated by the delay and complained to Nurse Butcher about needing to provide yet more information.  As part of his email to Nurse Butcher, he wrote:

> What physical exam?  . . . What else is there to do!  I am extremely getting annoyed by this because I've never felt like I was discriminated like I am feeling now!  This is the last time I'm doing anything.  Either they hire me or they don't and to not hire me because of a physical disability is unlawful discrimination.

(R. at 238.)  Nurse Butcher emailed and apologized for Young's feelings of frustration, explaining that she needed "objective findings" for the basis of the conclusion on the medical clearance form.  She told him that examples of such objective findings would be a copy of the physical examination, diagnostic studies, and/or imaging reports, which unfortunately Dr. Tien had not yet done.  Nurse Butcher reassured Young that he had personally "done everything that we have offered," and that the reason she had reached out to him for the physical examination was that sometimes a job candidate can get records from a physician more quickly than the employer.  *Id.*

Afterward, Nurse Butcher contacted Dr. Tien directly and asked for specific findings for Young in conjunction with the Functional Job Profile and the job posting.  On February 16, 2016, Dr. Tien faxed Nurse Butcher with the requested findings, indicating he had reviewed the posting and functional profile.  Dr. Tien then gave updated findings, stating that "Mr. Young's limitations are due

to a brachial plexus injury at birth[,]" with the following restrictions: "Limit shoulder motion. No overhead activities. No reaching above shoulder level. Limit reaching at or below shoulder level."

The next day, Nurse Butcher met with the GEA business group, which included Byron Brummit, the then-Lead Headcount Coordinator,[2] and Michael Groh from GEA Environmental Health Services. After a discussion of Young's restrictions, in which Nurse Butcher provided only the restrictions provided by Dr. Tien, Brummit and Groh determined that GEA would not be able to accommodate Young's restrictions:

> Nearly every manufacturing position in Appliance Park requires continuous shoulder motion at or below shoulder level and Mr. Young's restriction to "limit shoulder motion" eliminated nearly every Park Pool job assignment, and thus, GEA could not accommodate the removal of this essential function of the Park Pool position.

Affidavit of Byron Brummit. (R. at 269-72.) On February 24, 2016, GEA informed Young that it was rescinding its conditional offer of employment based on the medical information it had received, the Fit For Work assessment, and Dr. Tien's restrictions, stating that the restrictions could not be accommodated based on the essential functions of the Park Pool position.

---

[2] During the pendency of this litigation, Brummit became the Human Resources Manager for GEA.

On September 20, 2019, Young filed his verified complaint in Jefferson Circuit Court, asserting GEA had violated his rights under the Kentucky Civil Rights Act (KCRA), KRS[3] Chapter 344 *et seq.*, and Kentucky's Equal Opportunities Act, KRS Chapter 207 *et seq.* Specifically, Young claimed: (1) GEA had engaged in disability discrimination when it failed to hire him and failed to reasonably accommodate him as a qualified individual with a disability; (2) discriminated against him by failing to hire him due to his disability, in violation of KRS 207.150; and (3) unlawfully retaliated against him for engaging in protected activity opposing disability discrimination, in violation of KRS 344.280. The parties then engaged in significant pretrial discovery for approximately twenty months, with Young receiving three sets of interrogatories, two sets of requests for admissions, and four sets of requests for production of documents. During that time, the parties also took depositions of both Young and Nurse Butcher.

GEA moved for summary judgment on May 28, 2021. As support, it attached the abovementioned affidavit of Byron Brummit, as to why Young had not been hired. Brummit's affidavit also stated he was unaware of Young's email to Nurse Butcher complaining of discrimination at the time he and Groh made their decision not to hire him. In response, Young moved to enter a scheduling order for trial and to stay briefing on summary judgment pending completion of discovery.

---

[3] Kentucky Revised Statutes.

GEA opposed Young's motion, arguing the parties had engaged in extensive discovery for nearly two years, there were no pending discovery requests at the time of the motion, and there were no genuine issues of material fact.

After receiving the parties' briefs on the issue, the trial court entered its order granting summary judgment on November 18, 2021. The trial court found that Young had failed to establish a prima facie case of disability discrimination due to his failure "to put forth any evidence that he was able to perform the essential functions of the Park Pool position with or without reasonable accommodation." (R. at 760.) Furthermore, the trial court found that, even if Young could establish a prima facie case, he would not be able to establish discrimination under the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The trial court so determined because it found "nothing of an evidentiary nature in the record which suggests that GEA's reason for the revocation of its conditional offer of employment to Young did not actually motivate GEA's decision." (R. at 762.) In short, the trial court found that Young could not demonstrate that GEA's reason for its failure to hire him was pretextual. Additionally, the trial court found Young's claims of failure to accommodate, retaliation, and violation of Kentucky's Equal Opportunity Act were likewise without merit. This appeal followed.

## II. ANALYSIS

As an appellate court, we review a trial court's order granting summary judgment *de novo*, "without deference to either the trial court's assessment of the record or its legal conclusions." *Bruner v. Cooper*, 677 S.W.3d 252, 269 (Ky. 2023) (quoting *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010)). "[S]ummary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Wymer v. JH Properties, Inc.*, 50 S.W.3d 195, 199 (Ky. 2001) (citing CR[4] 56.03). Significantly, "[t]he party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Id.* "The party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial[.]" *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 194 (Ky. 2013). The burden of summary judgment "may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 481 (Ky. 1991) (citation omitted).

---

[4] Kentucky Rules of Civil Procedure.

Young presents three issues on appeal. First, he argues the trial court erroneously granted summary judgment to GEA on his claim for disability discrimination. Second, Young argues the trial court incorrectly granted summary judgment to GEA on his retaliation claim. Third, and finally, Young argues the trial court abused its discretion when it denied his motion to enter a scheduling order and stay summary judgment pending completion of discovery. We will consider each argument in turn.

Young first argues the trial court erred when it granted summary judgment against him regarding his claim of disability discrimination pursuant to the KCRA.

> Given similar language and the stated purpose of KRS Chapter 344 to embody the federal civil rights statutes, including the Americans with Disabilities Act (ADA), this court may look to federal case law in interpreting the Kentucky Civil Rights Act with respect to [the appellant's] claim of disability discrimination under KRS 344.040.
>
> . . .
>
> Under KRS 344.040(1), it is unlawful for an employer to discharge or otherwise discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because the person is a "qualified individual with a disability." The plaintiff bears the initial burden of establishing a prima facie case of disability discrimination against the defendant.

*Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705-06 (Ky. App. 2004) (footnote and citations omitted).  To establish a prima facie case, a plaintiff must demonstrate that (1) he was disabled under the relevant statute; (2) he was "otherwise qualified" to perform the requirements of the job, with or without reasonable accommodation; and (3) the employer took an adverse employment action against the employee because of his disability.  *Id.* at 706-07.

Analyzed under this framework, the initial question is whether Young suffered from a "disability," which the KCRA defines as "(a) [a] physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) [a] record of such an impairment; or (c) [b]eing regarded as having such an impairment."  KRS 344.010(4).  GEA argues Young was not disabled, basing this assertion on Young's own statements during his deposition that his Erb's palsy did not limit his everyday life.  In addition, GEA argues the trial court erroneously applied the federal ADA Amendments Act of 2008 (ADAAA), with its broadened definition of disability, to its analysis of Young's case – despite case law indicating that courts generally interpret the KCRA consistently with the pre-ADAAA version of the ADA.

We agree with GEA that the trial court erred when it applied the ADAAA version of "disability" to the present case.  The General Assembly has thus far declined to amend the KCRA to follow the ADAAA.  The trial court took

note of our precedent in *Larison v. Home of the Innocents*, 551 S.W.3d 36, 43 (Ky. App. 2018) ("But no matter these current definitions, 'the KCRA retains the former definition of disability[,]' prior to the 2008 Amendments of the federal law."). Yet the trial court blatantly chose to ignore our precedent and create its own rule when it applied the ADAAA to the KCRA. In so doing, the trial court violated the express mandate of SCR[5] 1.040(5), which requires our trial courts to follow applicable precedents in the Supreme Court and, when there are no such precedents, those established in the Court of Appeals. Leaving the trial court's error aside for the moment, the current authoritative answer to this question was announced by our Supreme Court in *Turner v. Norton Healthcare, Inc.*, 681 S.W.3d 26 (Ky. 2023):

> This brings us to the ADAAA and its impact on the KCRA. It has now been approximately fifteen years since the ADAAA was passed and the General Assembly has not expressed any intention to incorporate the federal amendments into the KCRA. Obviously, the protection of disabled persons from unjust discrimination, and how that class is to be defined for purposes of legal protection, is within the purview of the General Assembly's authority to set public policy. We call upon the General Assembly to bring clarity to this issue, one way or another, as whether the KCRA should be updated in line with the ADAAA is ultimately not within this Court's authority to decide.

*Id*. at 35.

---

[5] Rules of the Kentucky Supreme Court.

Nevertheless, as the Supreme Court did in *Turner*, we will assume for the sake of argument that Young was disabled for purposes of the KCRA under either the ADA or ADAAA definition of the term. We nonetheless agree with the trial court's decision to grant summary judgment because it correctly pointed out that Young was not "otherwise qualified" to perform the Park Pool position.

> "Qualified individual with a disability" means an individual with a disability as defined in KRS 344.010 who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's disability without undue hardship on the conduct of the employers' business. Consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job[.]

KRS 344.030(1).

Based on the considerations listed, we agree with the trial court that Young could not perform the essential functions of the Park Pool position. Physical qualifications, such as the ability to perform overhead lifting and reaching, can constitute "essential functions" of a position; *see Bratten v. SSI Services, Inc.*, 185 F.3d 625, 632 (6th Cir. 1999). The Functional Job Profile, the job posting, and the Fit For Work test were all evidence of the essential functions required by the Park Pool position, and such essential functions included reaching

-15-

and shoulder movement. The Functional Job Profile explicitly states that reaching at or below shoulder level and reaching above shoulder level was necessary approximately 66% of the time during any given shift. The job posting also indicated that the position was highly physical, and specifically listed frequent lifting and reaching as two examples of such physical activity. Furthermore, Young failed two of the five performance tests during the Fit For Work screening. Finally, it was not GEA but Young's own physician, Dr. Tien, who gave categorical restrictions: "Limit shoulder motion. No overhead activities. No reaching above shoulder level. Limit reaching at or below shoulder level." Brummit's affidavit, stating that Young could not be hired because his restrictions eliminated him from nearly every Park Pool assignment, cannot be said to be unexpected under these circumstances.

Against this evidence, Young has offered nothing more than supposition and conclusory allegations of discrimination. In his deposition, he admitted that he had no evidence of discrimination aside from the length of time it took to get his medical clearance and his feelings of discomfort during the Fit For Work testing. He did not provide any evidence that he could perform the essential functions of the Park Pool position. He also admitted that he did not ask for an accommodation for his impairment. "Generally, an ADA plaintiff bears the initial burden of proposing an accommodation and showing that that accommodation is

objectively reasonable." *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) (internal quotation marks and citation omitted).  Because Young failed to establish a prima facie case for discrimination, we agree with the trial court's determination that summary judgment was appropriate.  *See, e.g.*, *The Board of Regents of Northern Kentucky University v. Weickgenannt*, 485 S.W.3d 299 (Ky. 2016); *Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846 (Ky. 2016).

Next, we turn to Young's second argument, that the trial court erroneously granted summary judgment on his retaliation claim.  Young contends that GEA's decision not to hire him was retaliatory, predicated on his emailed complaint to Nurse Butcher that he felt discriminated against, and the failure to hire him would constitute unlawful discrimination.

> A prima facie case of retaliation requires a plaintiff to demonstrate "(1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action."

*Brooks v. Lexington-Fayette Urban County Housing Authority*, 132 S.W.3d 790, 803 (Ky. 2004) (quoting *Christopher v. Stouder Memorial Hospital*, 936 F.2d 870, 877 (6th Cir. 1991), *cert. denied*, 502 U.S. 1013, 112 S. Ct. 658, 116 L. Ed. 2d 749 (1991)).

As the trial court correctly determined, Young cannot show the second and fourth steps described in *Brooks* to establish a prima facie case. Step two requires showing that the decision maker knew about the protected activity. Yet the record shows that the only subject discussed at the meeting on February 17, 2016, was Young's set of restrictions as provided by Dr. Tien. Further, in his affidavit, Brummit states he had no knowledge of Young's email complaining of discrimination at the time the meeting took place. In addition, step four requires showing that there was a causal connection between the protected activity and the employer's adverse action. Young has nothing more than his subjective belief that the two items are connected, which is not sufficient. "A party's subjective beliefs about the nature of the evidence is not the sort of affirmative proof required to avoid summary judgment." *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. App. 2007). Because Young failed to establish a prima facie case regarding retaliation, here too we agree with the trial court's determination that summary judgment was appropriate.

Finally, in Young's third argument, he contends the trial court abused its discretion when it declined his motion to enter a scheduling order and stay briefing on the summary judgment motion pending completion of discovery. In essence, Young argues the trial court cut short the discovery period and granted summary judgment in the case prematurely. "[Summary judgment] is proper only

-18-

after the party opposing the motion has been given ample opportunity to complete discovery and then fails to offer controverting evidence." *Suter v. Mazyck*, 226 S.W.3d 837, 841 (Ky. App. 2007).

Although Young is correct that summary judgment must not be prematurely granted, we cannot agree that it was premature in this case. Discovery in this case took place over nearly a two-year period, over the course of which the parties requested and received significant discovery. As previously mentioned, GEA responded to three sets of interrogatories, two sets of requests for admissions, and four sets of requests for production of documents. In addition, the parties took depositions of both Young and Nurse Butcher, and their email correspondence forms the bulk of the evidence constituting the interactions between Young and GEA. Young contends that summary judgment was not appropriate because discovery was not yet completed. However, completed discovery is not required for summary judgment – "only that the opposing party had the opportunity to do so." *Id.* at 842. Moreover, at the time GEA moved for summary judgment, Young did not have any pending discovery requests, and he failed to adequately explain to the trial court why additional discovery was necessary. Under the circumstances of this case, we cannot say the trial court's decision to deny Young's motion to stay summary judgment pending further discovery was an abuse of discretion.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's order granting summary judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Soha T. Saiyed
Kelly M. Parry-Johnson
Jeremiah W. Reece
Louisville, Kentucky

BRIEF FOR APPELLEE:

Emily N. Litzinger
Chad M. Zimlich
Louisville, Kentucky