RENDERED:  SEPTEMBER 5, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1395-MR

CHRISTOPHER J. BOWEN                                    APPELLANT

v.
APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 20-CI-00486

ALISON M. CASSELL-HARRIS,
APRN                                                           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, EASTON, AND LAMBERT, JUDGES.

EASTON, JUDGE:  The Appellant, Christopher J. Bowen ("Bowen"), appeals

from the Franklin Circuit Court's Order granting Summary Judgment to the

Appellee, Alison M. Cassell-Harris ("Cassell-Harris"), APRN.[1]  The circuit court

determined by summary judgment that Bowen was unable to sustain a medical

---

[1] Advanced Practice Registered Nurse.

negligence case against Cassell-Harris because Bowen's expert did not offer sufficient testimony that Cassell-Harris deviated from the standard of care or caused harm to Bowen. Having reviewed the record and the applicable law, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

At approximately 1:00 a.m. the morning of June 18, 2019, Bowen presented to the Emergency Room ("ER") at Frankfort Regional Medical Center ("FRMC") with shortness of breath, chest tightness, and a rapid heart rate of about 210 beats per minute. Bowen was assessed initially by Cassell-Harris.

Cassell-Harris became aware of Bowen's diagnosis of Wolff-Parkinson-White Syndrome ("WPW"), which means he has an extra electrical pathway in his heart. Cassell-Harris determined Bowen was outside of her scope of knowledge to properly treat, so she transferred care of Bowen to Dr. Joseph Palumbo ("Dr. Palumbo"), a *locum tenens*[2] ER physician. According to Cassell-Harris's uncontroverted deposition testimony, Dr. Palumbo directed her to order several medications for Bowen. Cassell-Harris placed those medication orders, which were later administered to Bowen by a nurse.

At 2:00 a.m., Cassell-Harris's shift ended, and she left the hospital. Approximately fifteen minutes later, Bowen went into cardiac arrest. He was

---

[2] Latin for "to hold the place." It refers to a doctor who fills in for another doctor.

resuscitated within about three minutes and was stabilized. He was transferred from FRMC to the University of Kentucky Medical Center around 2:00 p.m. the next afternoon.

On June 16, 2020, Bowen filed a medical negligence action in the Franklin Circuit Court, naming several defendants, including Cassell-Harris. All other defendants were dismissed as parties prior to the summary judgment at issue. Cassell-Harris was the last remaining defendant.

Bowen filed his expert disclosure in February 2024. Only one expert was named, Dr. Matthew Vreeland ("Dr. Vreeland"). In June 2024, Cassell-Harris filed a motion for summary judgment, alleging Bowen's expert did not sufficiently set forth opinions that she violated the standard of care or that any action she took caused Bowen's injuries. After reviewing the deposition of Bowen's expert, the circuit court agreed with Cassell-Harris, and granted her summary judgment in an order entered on August 12, 2024. Bowen filed a motion to vacate the summary judgment. The circuit court again considered Dr. Vreeland's report and testimony and denied Bowen's motion to vacate. This appeal follows. Further facts and testimony will be discussed as they become relevant to our analysis.

**STANDARD OF REVIEW**

"The standard of review of a trial court's granting of summary

judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. Summary judgment is proper when it appears that it would be impossible for the adverse party to produce evidence at trial warranting a judgment in its favor." *Andrew v. Begley*, 203 S.W.3d 165, 169 (Ky. App. 2006) (internal quotation marks and citations omitted). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Jenkins v. Best*, 250 S.W.3d 680, 688 (Ky. App. 2007).

## ANALYSIS

Bowen argues the circuit court erred in granting summary judgment to Cassell-Harris because the expert testimony provided was adequate to create a genuine issue of material fact. He states Dr. Vreeland's deposition testimony indicated that Cassell-Harris's actions were a deviation from the standard of care and that they were a substantial factor in causing Bowen's injuries.

In a medical negligence case, a plaintiff must prove the applicable medical standard of care, a breach of that care, and an injury resulting from that breach of care. *Blankenship v. Collier*, 302 S.W.3d 665, 675 (Ky. 2010). In order to survive summary judgment, a plaintiff must present a genuine issue of material fact for every element. *See Andrew v. Begley*, *supra*, at 170.

-4-

A party's "burden of proof at the trial is greater than merely proving a negligent act followed by injury. There must be proof that the negligent act was the proximate cause of the injury. Negligence in medical malpractice cases must be established by expert testimony unless negligence and injurious results are so apparent that a layman with general knowledge would have no difficulty recognizing it." *Morris v. Hoffman*, 551 S.W.2d 8, 9 (Ky. App. 1977) (citations omitted). "[T]he medical testimony must be that the causation is probable and not merely possible." *Id.* Negligence cannot be assumed merely from a poor outcome of a patient. *Meador v. Arnold*, 94 S.W.2d 626, 631 (Ky. 1936).

"Under Kentucky law, a plaintiff alleging medical malpractice is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care." *Blankenship*, *supra*, at 670. "[T]he lack of expert testimony is truly a failure of proof [for which] a summary judgment is appropriate." *Adams v. Sietsema*, 533 S.W.3d 172, 177 (Ky. 2017) (internal quotation marks and citation omitted).

The circuit court determined that Dr. Vreeland's testimony did not satisfy the standard to get past summary judgment. The circuit court's order stated it "agrees with APRN Cassell-Harris that the expert testimony supplied by Mr. Bowen does not sufficiently suggest that APRN Cassell-Harris deviated from the

standard of care."[3]  To analyze further, we must look at both the sequence of events from the time Bowen came into the ER to when he was stabilized and also what Dr. Vreeland actually stated in his deposition testimony.  It is also important to understand what injuries Bowen has claimed.

Bowen has had additional treatment and procedures performed on his heart since this incident.  But according to his own expert, this event did not cause those to occur or be necessary; they were because of his underlying WPW.  It does not appear from the record that Bowen had any lasting physical injuries from the cardiac arrest, or at least none that can be attributed to this event rather than his WPW diagnosis.  But Bowen does claim Post-Traumatic Stress Disorder ("PTSD") and anxiety from this event and the treatment received at FRMC.

Dr. Vreeland was critical of the medication regiment ordered for Bowen.  He stated that neither Adenosine nor beta blockers should have been given to a patient with WPW.  He further stated the dosage of procainamide given to Bowen was insufficient.  According to Bowen's medical records, Cassell-Harris ordered 100 mg of procainamide to be administered to Bowen.  Dr. Vreeland opined that approximately 1,050 mg should have been administered, infused at 20-

---

[3] Circuit Court Order, August 12, 2024, Page 480 of Record.

50 mg per minute.  He also stated Bowen should have been cardioverted[4] upon arrival in the ER.

Cassell-Harris testified she ordered the medications on Dr. Palumbo's orders.  Bowen presented to the ER at approximately 1:00 a.m.  Cassell-Harris did the initial assessment and became aware of Bowen's WPW diagnosis.  She then claims she turned Bowen's care over to Dr. Palumbo, and Dr. Palumbo accepted that transfer of care, because Cassell-Harris felt Bowen's condition was outside her scope of practice and competency.  Bowen argues this creates a genuine issue of material fact because the medical records do not illustrate that Dr. Palumbo ordered the medications or became the primary caregiver for Bowen.  Dr. Palumbo has not been deposed in this case, so Bowen asserts it is only the testimony of Cassell-Harris that exists to support her narrative.

"In response to a motion for summary judgment, the respondent must present at least some affirmative evidence showing the existence of a genuine issue of material fact[.]" *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. App. 2007) (internal quotation marks and citations omitted).  Bowen contends that we have only Cassell-Harris's word that Dr. Palumbo told her to put in the order for the medications, and that Dr. Palumbo took over Bowen's care.  Yet Bowen has not presented any evidence in opposition to Cassell-Harris's testimony.  He has not

---

[4] The application of electric shock to bring the heart back into a normal rhythm.

shown any testimony or evidence that Dr. Palumbo did not accept responsibility for Bowen as a patient. Bowen cannot simply say "we don't know" to create an issue of material fact to avoid summary judgment.

Additionally, Bowen's medical records independently support Cassell-Harris's claim that Dr. Palumbo took over Bowen's care. In his medical records attached to Cassell-Harris's motion for summary judgment, there are notations that explicitly state this. For example, one notation states: "Patient presented to ER complaining of chest pain, SOA. Well appearing patient in no acute distress. AFebrile, VSS. Initial EKG showed Afib with RVR. No response to adenosine. Care transferred to Dr. Palumbo."[5] Further on the same page of records:

> This patient's care has been transferred to and accepted by [Dr. palumbo] [sic]. We discussed: the patient's chief complaint; labs and imaging that have been completed and those that are still pending; procedures that have been completed and those remaining to be done; any treatment provided and the patient's response to treatment; any significant change in condition; input from consultants if any; the treatment plan prior to the transfer of care. The accepting physician will follow up on all pending labs and imaging and make any necessary changes to the current impression and/or treatment plan. The accepting physician is now responsible for the patient's care and final disposition.[6]

---

[5] Medical Records of Christopher Bowen, Exhibit 1, Page 393 of Record.

[6] *Id.*

This entry was electronically signed by Jeremy P. Stich on June 18, 2019, at 13:49 (1:49 p.m.).  At the end of Bowen's records is the statement "I reviewed the PA/NP's chart.  I agree with the assessment and care plan, and confirm the diagnosis(es)."[7]  After this entry is the electronic signature of Joseph M. Palumbo, DO, on June 18, 2019, at 23:53 (11:53 p.m.).

Dr. Palumbo was never a defendant in this case.  We will not speculate as to why he was never named as a party or deposed in this case.  Nevertheless, from our review of Dr. Vreeland's deposition, it is Dr. Palumbo and his actions that Dr. Vreeland most strongly criticized.  In addition to the medication critique and the failure to cardiovert Bowen upon arrival, Dr. Vreeland discussed Dr. Palumbo's excited statements immediately after resuscitating Bowen, which were remembered by Bowen and are a source of Bowen's claimed and continuing anxiety.

We have no doubt this entire situation was incredibly stressful for Bowen, and it would not be surprising for a patient to have anxiety after such an incident.  But to assess what part Cassell-Harris played in this, we must again look at the timeline.  Bowen went into cardiac arrest at approximately 2:17 a.m.  Cassell-Harris's shift ended at 2:00 a.m., and she had already left the hospital.  Anything that occurred immediately prior to or subsequent to the cardiac arrest

---

[7] *Id.* Page 399 of Record.

cannot be attributed to Cassell-Harris or any action she took or failed to take, especially considering the uncontroverted evidence that Dr. Palumbo was in charge.

Ultimately, Bowen is unable to show that Cassell-Harris breached any duty or that any breach caused his injuries. Dr. Vreeland specifically stated in his deposition that it was reasonable for an APRN to rely on the attending physician's instructions in these circumstances. Regardless of who ordered the medications, Bowen cannot meet the burden to survive summary judgment. While Dr. Vreeland had criticisms of the care Bowen received, when taken as a whole, Dr. Vreeland's testimony did not affirmatively state that any care—or lack of care—was the cause of Bowen's cardiac arrest:

> Q: Okay. Then, based on your opinions, can we agree that none of the medications that were given caused or contributed to cause Mr. Bowen's code event?
>
> A: Other than our discussion about the procainamide not being delivered in a reasonable dose, yes.
>
> Q: Okay. Right. It didn't—
>
> A: But other than that . . .
>
> Q: It didn't cause it?
>
> A: No.
>
> Q: That's right?
>
> A: Correct.

Q: Okay. So neither the procainamide, the adenosine, or the beta blockers caused Mr. Bowen's code event, correct?

A: That's correct.

Q: Okay. I think your sort of asterisks on the procainamide there was that perhaps it could have prevented it if he had been given more, but we don't know that as we sit here today?

A: We don't know that.

Q: Because you also agreed with me that the event—or maybe—is it your opinion that the event that he sustained was a result of the continuation of his underlying condition?

A: Yes.[8]

Dr. Vreeland could not state with any degree of even probability that Bowen would not have suffered his cardiac arrest even if he had been given an appropriate dose of procainamide. "[P]roximate causation must be shown by a reasonable degree of medical probability, rather than mere possibility or speculation." *Ashland Hosp. Corp. v. Lewis*, 581 S.W.3d 572, 577-78 (Ky. 2019). If Dr. Vreeland cannot show that Cassell-Harris's actions were the cause of Bowen's cardiac arrest, he certainly cannot make the leap that Cassell-Harris's actions were the cause of Bowen' anxiety and even PTSD that arose due to the cardiac arrest. The cardiac arrest occurred after Cassell-Harris ceased participating

---

[8] Deposition of Dr. Matthew Vreeland, Pages 44-45.

-11-

in Bowen's care and after Cassell-Harris properly followed the treating doctor's orders.

## CONCLUSION

Because Bowen was unable to provide expert testimony that Cassell-Harris's actions constituted a deviation from the standard of care or that they caused Bowen's injuries, summary judgment was appropriate.  We AFFIRM the Franklin Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Escum L. Moore, III
Lexington, Kentucky

BRIEF FOR APPELLEE:

Joseph A. Wright
Eleanor M.B. Davis
Elizabeth F. Ousley
Haylee M. Deutsch
Louisville, Kentucky