Robert Douglas **ALDERMAN**, Administrator of the Estate of Kimberly D'Ann Alderman, deceased; Robert Douglas Alderman and Rhonda Herrington Alderman, Individually and as the Parents of Kimberly D'Ann Alderman, deceased, Appellants,

v.

Randy **BRADLEY** d/b/a B & C Gun Shop, Appellee.

No. 95–CA–003323–MR.

Court of Appeals of Kentucky.

Aug. 1, 1997.

James D. Ishmael, Jr., Lexington, for Appellants.

Perry M. Bentley, Todd S. Page, Lexington, B.R. Salyer, Morehead, for Appellee.

Before COMBS, EMBERTON and GUDGEL, JJ.

## OPINION

EMBERTON, Judge.

Robert Douglas Alderman and Rhonda Herrington Alderman bring this appeal from the summary judgment of the Rowan Circuit Court entered November 7, 1995, in favor of Randy Bradley d/b/a B & C Gun Shop. We affirm.

This case involves the tragic death of Kim Alderman who was mortally wounded by her seventeen-year-old boyfriend, Jason Hodges, on November 14, 1993, while the two were hunting in Fleming County. It is undisputed that the weapon used by Jason was a 30/30 Marlin rifle purchased November 12, 1993, at B & C Gun Shop.

Initially, the appellants brought an action against Hodges and his parents; subsequently they amended their complaint to assert a claim against Bradley d/b/a B & C Gun Shop claiming negligence *per se,* for an alleged violation of the Federal Gun Control Act.[1]

The trial court granted summary judgment based on its conclusion that, as a matter of law, there was no negligence *per se* because there was no violation of the Gun Control Act. The trial court found that no Kentucky statute prohibited Jason's ownership or possession of the firearm and that Bradley had no knowledge of Jason's propensity, if any, to misuse it. The trial court concluded: "Under general negligence law theory, the simple fact is that Bradley had no duty, as a matter of law, and therefore there is no breach which could result in liability." The trial court further concluded proximate cause and foreseeability were lacking under the undisputed facts of the case.

■ In this instance, the trial court found that although the circumstances under which the weapon was purchased were in controversy there was no violation of the federal law. This conclusion was predicated on the undisputed fact that an adult, Tana Zoerb, signed the appropriate paper work. The appellants argue such a conclusion completely ignores the concept of a sham or "strawman" sale in violation of the Gun Control Act. *See, Perri v. Department of the Treasury,* 637 F.2d 1332 (9th Cir.1981); *Barrett v. United*

---

1. Appellants claim Bradley violated that portion of the Gun Control Act which provides in relevant part:
   (b) It shall be unlawful for any licensed importer, licensed manufacturer, *licensed dealer,* or licensed collector to *sell or deliver;*
   (1) any firearm or ammunition to any individual who the licensee *knows or has reasonable cause to believe is less than eighteen years of age.* . . .
   18 U.S.C. § 922(b)(1) (emphasis added).

*States,* 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976). A "strawman" purchase occurs when a lawful purchaser buys for an unlawful one. A dealer who sells a gun knowing, or with reason to know, it is for an unqualified purchaser may thereby violate the Act. We agree with the appellant that factual questions precluded summary resolution of this issue. Nevertheless, even if we assume that Bradley violated 18 U.S.C. § 922, such violation does not give rise to a claim for negligence under Kentucky law. Thus, the summary judgment must be affirmed.

Appellant acknowledges that no Kentucky law prohibited the sale of the rifle to Jason. Furthermore, neither Kentucky law nor the federal law prohibited Jason's possession and use of the rifle. In fact, Jason, a seventeen-year old, is considered competent to hunt, unaccompanied by an adult, with such a firearm in Kentucky.[2] The undisputed evidence established that Jason possessed and regularly hunted with firearms, and his parents knew and approved of his doing so. Moreover, at oral argument, counsel conceded appellants did not assert a common law theory of recovery; instead, their cause of action is predicated solely on an alleged violation of the federal gun control act.

The appellants maintain that Ky.Rev.Stat. (KRS) 446.070, in conjunction with 18.U.S.C. § 922, authorizes a private cause of action. They argue that a violation of the federal regulation that results in injury constitutes negligence *per se.*

KRS 446.070 provides:

> A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

■ The appellee counters that this statute applies only to laws enacted by Kentucky's General Assembly. We agree that its reach is limited to violations of Kentucky statutes and does not extend to federal regulations. In *Baker v. White,* 251 Ky. 691, 65

S.W.2d 1022 (1933), the court considered the meaning of the term "statute" as presently used in KRS 446.070. The court concluded that a municipal ordinance could not be construed to be included in the scope and meaning of the word "statute" as used in Chapter 446. Noting the rules of statutory construction which are currently set forth in KRS 446.080(4) the court held:

> In harmony with the foregoing rules of construction prescribed by the Legislature, this court has consistently held that, in the interpretation and construction of statutes, words and phrases employed by the law-making body must be given their plain and ordinary meaning according to popular usage, (citations omitted), unless they have acquired a technical sense, in which event, they will be given such accepted technical meaning. (Citations omitted). Applying either the general rule or the exception to the word "statute" as used in section 466, supra, it is apparent that it cannot be construed to include within its scope and meaning a municipal ordinance, since according to common usage and understanding, the *former term applies to laws enacted by the supreme lawmaking body of the state,* while the latter is commonly understood to mean an enactment of the council of a municipal corporation, a subdivision of the state, and applying solely to the government of such municipality; and, if classified as coming within the exception as a technical word or one that has acquired a peculiar meaning, the former does not, when so regarded, become any more comprehensive. (Emphasis added).

*Baker,* at 694, 695, 65 S.W.2d 1022.

■ Where the legislature has not expressed a contrary intention, and where the context does not require otherwise, we must interpret statutory language in accordance with common usage and understanding. The legislature did not expressly include federal laws within the purview of KRS 446.070, and as related in *Baker, supra,* "statute" as utilized in Chapter 446, *et. seq.,* refers to those

---

**2.** 301 KAR 2:172(13) requires in pertinent part that:

> (1) *An adult shall accompany firearm deer hunters under sixteen (16) years old* and shall

remain in a position to take immediate control of the juvenile's firearm.

laws enacted by *our* General Assembly. As further noted in *Baker*, even when classified within the exception as a technical word or one that has acquired a peculiar meaning, the word "statute" does not become any more comprehensive. When read in its entirety, Chapter 446 clearly demonstrates the legislature's intention and attempt to establish rules for construing, interpreting and applying the statutes enacted by it—the supreme law-making body of our Commonwealth. KRS 446.070 was enacted to ensure that a person for whose benefit a statute was enacted may recover from an offender although the statute does not prescribe a civil remedy for violation. *See e.g., Hackney v. Fordson Coal Co.*, 230 Ky. 362, 19 S.W.2d 989 (1929). *See also Reed v. Maley*, 115 Ky. 816, 74 S.W. 1079 (1903).

It is elemental that in order to state a cause of action for negligence a plaintiff must show that he or she was owed a duty by the defendant; that there was a breach of the duty; that there was an injury; and that there was a causal connection. *See Mullins v. Commonwealth Life Ins. Co.*, Ky., 839 S.W.2d 245, 247 (1992). In a case predicated on negligence it is necessary to demonstrate that the person so charged failed to discharge a legal duty or conform his conduct to the standard required. *Mitchell v. Hadl*, Ky., 816 S.W.2d 183 (1991).

The statement of whether a duty exists is but a conclusion of whether a plaintiff's interests are entitled to legal protection against the defendant's conduct. The court must determine whether a duty exists and, in doing so, engages in what is essentially a policy determination. *Mullins, supra*, at 248. It is true, of course, that the violation of a statute, ordinance, or administrative regulation, is a breach which may, in the proper circumstance, constitute negligence *per se. See Britton v. Wooten*, Ky., 817 S.W.2d 443 (1991). *See also Real Estate Marketing, Inc. v. Franz*, Ky., 885 S.W.2d 921 (1994). It is not true, however, that violation of a statute or regulation necessarily implies negligence. In order for a violation to become negligence *per se*, the plaintiff must be a member of the class of persons intended to be protected by the regulation, and the injury suffered must be an event which the regulation was designed to prevent. Only when both requirements are affirmatively demonstrated is negligence *per se* established with the applicable regulation or statute defining the relevant standard of care. *See Lomayestewa v. Our Lady of Mercy Hospital*, Ky., 589 S.W.2d 885, 887 (1979); *Johnson v. S.O.S. Transp., Inc.*, 926 F.2d 516 (6th Cir.1991); *White v. Turfway Park Racing Ass'n*, 718 F.Supp. 615 (E.D.Ky.1989); *aff'd* 909 F.2d 941 (6th Cir. 1990); *Michals v. William T. Watkins Mem. United Methodist Church*, Ky.App., 873 S.W.2d 216 (1994).

No Kentucky case, state or federal, directly construes 18 U.S.C. § 922(b)(1). However, we have reviewed cases from various state and federal courts that have considered the scope and effect of the federal legislation. A majority of these courts have concluded that Congress did not intend to create a private cause of action for victims injured by firearms obtained in violation of § 922. As stated in *Huddleston v. United States*, 415 U.S. 814, 824, 94 S.Ct. 1262, 1268, 39 L.Ed.2d 782 (1974), "[t]he principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping firearms out of the hands of those not legally entitled to *possess* them because of age, criminal background, or incompetency." (Emphasis added).

As related in *Kreshesky v. Codd*, 89 Misc.2d 439, 391 N.Y.S.2d 792 (N.Y.1976), the Federal Gun Control Act was enacted in response to civil disorder and unrest (in the 1960's) which had resulted in the assassination of prominent public figures. (*United States Code Congressional and Administrative News*, 90th Cong., 2d Sess., 1968, p. 4413). The provisions of 18 U.S.C. § 922 were originally part of the Omnibus Crime Control and Safe Streets Act of 1968 and were amended as part of the Gun control Act of 1968 to include shotguns and rifles. Congress found a causal relationship between the easy availability of firearms and juvenile and youthful criminal behavior. Thus, Congress enacted a more effective licensing system applicable to commercial firearms' dealers. (Pub.L.90–351, § 901(a)(6)). The *Codd* court went on to examine and discuss what the Gun Control Act did *not* intend to do:

In its Declaration of Purpose (Pub.L.90–618, § 101) Congress declared that 'it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting ... target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purpose....

*Id.* at 793.

Ultimately, the New York court reasoned that although the Gun Control Act would prohibit the sale of the weapon by a federally licensed dealer to Kreshesky because of his age, the Act could not serve as a blanket rule for denying Kreshesky a permit for the use of the weapon since he was legally entitled to own, possess and use it.

In *Hulsman v. Hemmeter Development Corp.*, 65 Haw. 58, 647 P.2d 713 (1982), the Supreme Court of Hawaii analyzed its own firearm statutes and the Federal Gun Control Act. The court concluded neither the state nor the federal statutes regulating firearm sales created a duty on a seller in a negligence action. The court quoted with approval *Decker v. Gibson Products Co.*, 505 F.Supp. 34 (M.D.Ga.1980), at p. 36:

> There is no indication in the legislative history of § 922 which suggests a congressional intention to vest in those victims injured by firearms obtained in a violation of § 922 *a federal right to damages.* A careful reading of the legislative history suggests that Congress intended the section to thwart the unlawful disposition of firearms at its inception rather than provide retrospective, remedial relief. This is evidenced by the legislative history's emphasis on increased law enforcement assistance and by the desire of Congress to

afford relief to the Nation, rather than its injured victims.

The *Hulsman* court also rejected the appellant's theory of common law negligence and affirmed summary judgment in favor of the firearms dealer.[3]

In *Olson v. Ratzel*, 89 Wis.2d 227, 278 N.W.2d 238 (1978), the Wisconsin appellate court analyzed the legislative history and purpose of 18 U.S.C. § 922. It noted that the Senate Report reveals Congress's intent to attack the sources of firearms acquisition in an effort to prevent juveniles and minors from obtaining weapons in contravention and circumvention of *state* and *local* laws. Given the legislative history of the Act, the court found it was dubious that Congress intended the legislation to serve as the standard of care of a reasonable person. The court noted further that neither the language of the Act nor the extensive legislative history referred to the risk of injury from gun accidents. Ultimately, the court held that violations of 18 U.S.C. § 922 are not negligence *per se.*

Based on our review of the language and legislative history of the Federal Gun Control Act we conclude the alleged violation, in the context of the undisputed facts of the present case, does not constitute negligence *per se.* We agree the Act was intended to thwart the unlawful distribution of firearms in contravention and circumvention of state and local laws. It was not intended, however, to protect against accidents which occur, as a result of negligence, during the ordinary and legitimate use of firearms.

Here, Jason was entitled to possess, even own the rifle. Moreover, it was perfectly legitimate for him to use the rifle to hunt. Thus, the harm which befell Kim, Jason's hunting companion, was not an event the legislation was designed to prevent. We decline to interpret the federal law in a manner that would modify the common law of this jurisdiction and create a duty owed Kimberly

---

3. A number of jurisdictions have considered whether a gun dealer can be civilly liable in cases such as the one at bar. Many have concluded the dealer breached no duty or that the dealer's action was not the proximate cause of the injury. *See Everett v. Carter,* 490 So.2d 193 (Fla. 2d Dist. 1986) (distinguishing *K–Mart Enter-* *prises of Florida, Inc. v. Keller,* 439 So.2d 283 (Fla. 3d DCA 1983) because of the fact Carter was under no legal prohibition by either federal or state law from possessing or owning the weapon); *Fly v. Cannon,* 836 S.W.2d 570 (Tenn.App. 1992); *Jantzen v. Edelman,* 206 A.D.2d 406, 614 N.Y.S.2d 744 (1994).

by Bradley not otherwise imposed by our General Assembly. Accordingly, the violation, if any, on Bradley's part did not constitute negligence *per se* or otherwise afford the appellants a private right of action. Since the elements of a negligence claim against Bradley cannot be established, he properly sought and obtained summary judgment.

The judgment is affirmed.

All concur.