**John SHROUT, Appellant,**

v.

**THE TFE GROUP; and Eddie Kendrick, Appellees.**

**No. 2004–CA–000834–MR.**

Court of Appeals of Kentucky.

April 1, 2005.

Charles W. Arnold, Lexington, KY, Edward J. Lorenz, Williamstown, KY, for appellant.

H. Lawson Walker II, Andrew R. Kaake, Cincinnati, OH, for appellees.

Before SCHRODER, TAYLOR, and VANMETER, Judges.

## OPINION

VANMETER, Judge.

John Shrout, a truck driver, was terminated from his employment after a positive drug test. However, the testing was not conducted as required by federal regulations, and the test results were inaccurate due to the improper handling of the tested

sample and Shrout's use of legal, over-the-counter (OTC) medications. The issues we must decide on appeal are whether the employer's failure to comply with federal testing regulations creates an exception to Kentucky's employment at-will doctrine, and whether Shrout has stated a viable claim for defamation. We hold that the failure to comply with the federal drug testing regulations does not create an exception to the employment at-will doctrine, but that the employer may be liable for defamation for failing to accurately report the test results. Therefore, we affirm in part and reverse in part.

## I. *Facts.*

According to Shrout's complaint and first amended complaint,[1] he was employed by The TFE Group, Inc. as a long-distance, over-the-road truck driver. As a condition of this employment, Shrout was subject to random drug and alcohol testing. On February 15, 2002, Shrout submitted to such a test, which was administered by an outside testing facility. Approximately 10 days later, TFE's physician and medical review officer informed Shrout that he had tested positive for amphetamines. Shrout disputed the results and informed his supervisor, Eddie Kendrick, that the positive results must have been caused by his use of Contact and Vicks Sinex, which are legal OTC drugs.

At the time Shrout took the initial test, he requested that the sample be treated as a split sample so that a second test would be possible. However, for reasons which are unclear, the split sample did not occur and the testing laboratory did not retain any portion of the initial urine sample. After being notified of the positive test,

Shrout requested a second test, including a blood or hair sample test. On March 11, 2002, TFE sent Shrout an evaluation form and a referral to a substance abuse evaluation firm in Florence, Kentucky. Shrout underwent an evaluation on March 13, and on March 18 the evaluation firm issued a clearance to "return to work in a safety-sensitive position."

TFE nevertheless fired Shrout on March 14 based on the February 26 positive test result. On April 18 Shrout submitted to a body hair drug test. The results of that test were negative for amphetamine, demonstrating that the February test had indicated a false positive.

Since the time of his termination by TFE, Shrout has been unable to find work as an over-the-road truck driver. The record shows that whenever Shrout applies for a truck driving position, federal regulations require him to sign a consent and release form authorizing TFE to disclose any prior drug testing results. The disclosures provided by TFE have indicated that the February 2002 drug test result was positive.

On December 5, 2002, Shrout filed a complaint against TFE and Kendrick claiming wrongful termination (count I); defamation (counts II and III); and "fraud, oppression, malice and a wanton disregard for truth and reputation" (count IV). After TFE filed its initial motion to dismiss for failure to state a claim, Shrout filed an amended complaint which added a number of the factual allegations included within the factual recitation above, and claimed wrongful termination based on the failure to comply with federal drug-testing regulations (Count V), as well as defama-

---

1. The circuit court dismissed Shrout's claim under CR 12.02(f) for "failure to state a claim upon which relief can be granted." Under such a motion, the pleadings are liberally construed in a light most favorable to the plaintiff, and the material allegations in the complaint are regarded to be true. *Pike v. George,* 434 S.W.2d 626, 627 (Ky.1968); *Gall v. Scroggy,* 725 S.W.2d 867, 869 (Ky.App. 1987).

tion in reporting the results of a flawed test (Count VI).

After Shrout amended his complaint, TFE renewed its motion to dismiss. The Grant Circuit Court sustained the motion. This appeal follows.

## II. *Wrongful Discharge.*

The parties agree that Kentucky adheres to the "terminable at will" doctrine, in that "[o]rdinarily an employer may discharge [an] at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible."[2] In *Firestone Textile Co. Div. v. Meadows,* the Kentucky Supreme Court recognized a narrow exception to the terminable at will doctrine and acknowledged a cause of action for wrongful discharge, but only in those limited circumstances in which (1) the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law; and (2) the policy is evidenced by a constitutional or statutory provision.[3] "The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide[.]"[4] In *Grzyb v. Evans,* the Kentucky Supreme Court further clarified *Firestone* by stating:

> We adopt, as an appropriate caveat to our decision in *Firestone Textile Co. Div. v. Meadows, supra,* the position of the Michigan Supreme Court in *Suchodolski v. Michigan Consolidated Gas Co.,* 412 Mich. 692, 316 N.W.2d 710 (1982). The Michigan court held that only two situations exist where "grounds for discharging an employee are so con-

trary to public policy as to be actionable" absent "explicit legislative statements prohibiting the discharge." 316 N.W.2d at 711. First, "where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment." Second, "when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." 316 N.W.2d at 711–12.[5]

Underpinning any cause of action for wrongful discharge is KRS 446.070, pursuant to which

> a person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation. But this is limited to where the statute is penal in nature, or where by its terms the statute does not prescribe the remedy for its violation.... Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute.[6]

Thus, important to a finding of wrongful discharge is the requirement that the public policy must be defined by statute and directed at providing statutory protection to the worker in his employment situation.[7]

In the instant case, Shrout argues that the public policy violation underpinning his cause of action for wrongful discharge is that the drug test which ultimately led to his termination did not

**2.** *Grzyb v. Evans,* 700 S.W.2d 399, 400 (Ky. 1985). *See also Firestone Textile Co. Div. v. Meadows,* 666 S.W.2d 730, 731 (Ky.1983).

**3.** *Firestone,* 666 S.W.2d at 731 (citing *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834, 835 (1983)).

**4.** *Grzyb,* 700 S.W.2d at 401.

**5.** 700 S.W.2d at 402.

**6.** *Id.* at 401. (citation omitted).

**7.** *Id.* at 400.

comply with federal drug testing regulations,[8] that the federal regulations exist for the protection of workers who might otherwise be subject to disciplinary action as a result of flawed test results, and that employers cannot take disciplinary actions except based on test results which comply with the regulations.

Shrout's argument fails for two reasons. The first is that KRS 446.070, the underpinning of a wrongful discharge, extends a right of action only for the violation of a Kentucky statute or a constitutional provision. The protection does not extend to the violation of a federal regulation.[9] Since Shrout's wrongful discharge claim hinges on the violation of a federal regulation, he cannot benefit from KRS 446.070.

The second reason Shrout's argument fails is that, as noted above, the public policy must be defined by statute and must be directed at providing statutory protection to the worker in his employment situation. Shrout's analysis relies on federal drug testing regulations promulgated under the authority of the Omnibus Transportation Employee Testing Act of 1991.[10] The federal courts which have looked at Congress's purpose in enacting this legislation have acknowledged employee rights as one of the purposes of the legislation, but have concluded that Congress "intended to provide a general benefit to the public by increasing the level of passenger safety[.]"[11] Thus, protection of employees is not the primary purpose of this statute and the regulations governing drug testing.

Shrout claims that the failure to follow the federal regulations constitutes negligence per se, quoting at length from *Alderman v. Bradley.*[12] In *Alderman,* this court recognized the elements of negligence per se as being that (1) the plaintiff must be a member of the class of persons intended to be protected by the regulation, and (2) the injury suffered must be an event which the regulation was designed to prevent.[13] However, as noted, the regulation is primarily designed to protect the public.

Shrout's claim is not that he was fired for failing or refusing to violate a law in the course of his employment, and he cannot make any reasonable claim that he was discharged for exercising a right conferred by well-established legislative enactment. This is in contrast to the holdings in *Pari-Mutuel Clerks' Union v. Kentucky Jockey Club,*[14] which recognized wrongful discharge because a worker had authorized a labor union to represent him as permitted by statute, and in *Firestone,* in which the worker had been fired for filing a workers' compensation claim.

### III. *Defamation*

■ Shrout's claim of defamation is based on TFE's disclosure of the positive results of the drug test he took in February 2002. Shrout argues that since the test was flawed, TFE may not publicize the results in disclosures to Shrout's prospective employers.

**8.** 49 C.F.R., Part 40.

**9.** *Alderman v. Bradley,* 957 S.W.2d 264, 266 (Ky.App.1997).

**10.** Pub.L. No. 102–143, Title V (1991).

**11.** *Drake v. Delta Airlines, Inc.,* 923 F.Supp. 387, 392 (E.D.N.Y.1996), *aff'd in part, rev'd in part,* 147 F.3d 169 (2nd Cir.1998); *see Parry v. Mohawk Motors of Michigan, Inc.,* 236 F.3d 299, 309 (6th Cir.2000).

**12.** 957 S.W.2d 264 (Ky.App.1997).

**13.** Id. at 267.

**14.** 551 S.W.2d 801 (Ky.1977).

In order to understand Shrout's argument, a review of the Department of Transportation's (DOT's) regulatory scheme is necessary. Under DOT regulations,[15] the employer is responsible for meeting all applicable procedures and requirements of workplace drug testing,[16] and is "responsible for all actions of [its] officials, representatives, and agents (including service agents) in carrying out the requirements of the DOT agency regulations."[17]

One of those service agents[18] is the medical review officer ("MRO"),[19] who has a number of important functions as the "independent and impartial 'gatekeeper' and advocate for the accuracy and integrity of the drug testing process."[20] Among these functions are ensuring review of chain of custody of samples; providing feedback to employers and laboratories; determining whether legitimate medical reasons exist for confirmed positive, adulterated, substituted, and invalid drug tests; providing review of employees' drug tests; investigating and correcting problems where possible and notifying appropriate parties when necessary (e.g., cancelled or problematic tests, or incorrect results); and ensuring the timely flow of test results and other information to employers.[21]

Specifically with regard to an employee's positive drug test result, the MRO is to contact the employee, discuss the test result with the employee, and attempt to verify the test result or to ascertain whether any legitimate medical reason exists for the test result.[22] If a legitimate medical reason exists, the MRO "must verify the test result as negative. Otherwise, [he or she] must verify the test result as positive."[23] If the test is verified as positive, the MRO must notify the employee of his or her right to a test of the split specimen.[24] If the employee so requests, but the split sample is no longer available for testing, the entire test must be cancelled, including the original positive from the primary specimen, and the employer, through its designated employer representative, must obtain another sample under direct observation.[25] "A cancelled drug test is neither positive nor negative."[26]

In the instant case, Shrout alleges that he gave a medically legitimate reason which should have caused the MRO to verify the February 16, 2002 test as negative. Failing that, the MRO should have verified that Shrout's request for a split sample test was not able to be completed due to the unavailability of the split sample for testing, with the result that the test was cancelled, i.e., there was neither a positive nor a negative result. Notwithstanding these problems with the primary test sample, Shrout alleges that the MRO

**15.** Procedures for Transportation Workplace Drug and Alcohol Testing Programs, 49 C.F.R. pt. 40.

**16.** 49 C.F.R. § 40.11(a).

**17.** 49 C.F.R. § 40.11(b).

**18.** 49 C.F.R. § 40.3.

**19.** 49 C.F.R. § 40.3. This section defines a Medical Review Officer as "[a] person who is a licensed physician and who is responsible for receiving and reviewing laboratory results generated by an employer's drug testing program and evaluating medical explanations for certain drug test results."

**20.** 49 C.F.R. § 40.123(a).

**21.** 49 C.F.R. § 40.123(b).

**22.** 49 C.F.R. §§ 40.129, 40.131, 40.137.

**23.** 49 C.F.R. § 40.137(d).

**24.** 49 C.F.R. § 40.153.

**25.** 49 C.F.R. §§ 40.187(d), 40.201(e).

**26.** 49 C.F.R. § 40.207.

erroneously verified the primary sample as positive, and TFE improperly continued to report the test results as positive to subsequent, prospective employers. TFE argues "[Shrout] signed detailed consent forms authorizing TFE to release the results of his prior positive drug test." Shrout's counterargument is that since the test was properly either a verified negative test or a cancelled test, it should not have been disclosed as a positive test.

In *Stewart v. Pantry, Inc.*, the court summarized the elements of defamation as "(1) defamatory language, (2) about the plaintiff (3) which is published and (4) which causes injury to reputation." [27] The court further defined "defamatory language" as "language which 'tends to (1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation.' " [28] On its face, Shrout's complaint made such a case.

Having reviewed TFE's arguments that Shrout consented to the disclosure and that disclosure to prospective employers was privileged, we conclude that both those arguments presuppose that the test involved was verified positive. As noted, for purposes of a motion to dismiss under CR 12.02, the material allegations of Shrout's complaint are to be taken as true. Assuming that the facts as alleged by Shrout are true, *i.e.*, that the test was not verified positive but was actually negative or cancelled, our view is that he has stated a cause of action for defamation sufficient to survive a motion to dismiss.

The judgment of the Grant Circuit Court is reversed, and this matter is remanded to that court for further proceedings consistent herewith.

ALL CONCUR.

---

**27.** 715 F.Supp. 1361, 1366 (W.D.Ky.1988) (citing *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270 (Ky.App.1982)).

**28.** 715 F.Supp. at 1366 (quoting *McCall v. Courier–Journal & Louisville Times*, 623 S.W.2d 882, 884 (Ky.1981)).