RENDERED: OCTOBER 17, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1521-MR

JENA LHOTSKY AND JENA
LHOTSKY, AS GUARDIAN,
CONSERVATOR, AND NEXT
FRIEND FOR ALEX LHOTSKY,
A DISABLED ADULT                                                    APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE ANN BAILEY SMITH, JUDGE
ACTION NO. 21-CI-002784


GUY SUTCLIFFE                                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, L. JONES, AND LAMBERT, JUDGES.

CETRULO, JUDGE: This is an appeal from an Opinion and Order granting

summary judgment in favor of Guy Sutcliffe ("Sutcliffe") following a tragic single

car accident involving Alex Lhotsky ("Lhotsky"). For reasons set forth herein, we

affirm the Jefferson Circuit Court.

**FACTS**

On August 28, 2020, Lhotsky was a passenger in a vehicle driven by his friend, Willard Patterson ("Patterson"). The two had been to dinner and both had consumed alcoholic beverages. They were driving home on U.S. Highway 42 ("Highway 42") in Prospect, Kentucky during a heavy rain. According to crash data retrieval, Patterson was driving 34 miles per hour over the speed limit when he lost control of his vehicle. It left the roadway, ultimately colliding with a stone mailbox located adjacent to Highway 42. Patterson did not survive the accident. His postmortem blood toxicology revealed a 0.067% blood alcohol concentration in his system. Lhotsky survived, but sustained serious and permanent brain injuries, among other injuries to his body.

In May 2021, his wife and now guardian, Jena Lhotsky, filed suit against Patterson's estate and against Sutcliffe, the current owner of the residence associated with the mailbox.[1] As to Sutcliffe, Lhotsky claimed negligence for maintaining a stone mailbox that was "unyielding upon impact" and alleging that it was non-crashworthy. Discovery proceeded but did not establish who had built the mailbox or when it was installed. Discovery revealed that the mailbox had two compartments for mail. Sutcliffe testified it was present when he purchased the

---

[1] Lhotsky later amended the complaint to also name the builder of the home located at 10606 Highway 42 (where the accident occurred) and the first owner of that home. Those parties were dismissed by an earlier summary judgment, and no appeal was taken from that ruling.

property in 1997 and that he used the mailbox along with his next-door neighbor, Robert Schwartz. Mr. Schwartz was never sued or deposed. Discovery also confirmed that the mailbox was not actually located on Sutcliffe's land but just beyond his property's boundary, although the Patterson vehicle ultimately ended up on Sutcliffe's property.

In 2024, Sutcliffe moved for summary judgment, arguing that: 1) he owed no duty to Lhotsky under negligence *per se* nor common law theories; and 2) the mailbox was not the proximate cause of the accident. The circuit court considered the parties' briefs, conducted oral arguments, and granted Sutcliffe's motion, resulting in this appeal.

Further facts will be provided as we address the arguments on appeal.

**STANDARD OF REVIEW**

Appellate review of a summary judgment addresses only questions of law, thus our review is *de novo*. *Culp v. SI Select Basketball*, 663 S.W.3d 451, 453 (Ky. App. 2023) (citing *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016)). The standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing Kentucky Rule of Civil Procedure ("CR") 56.03). The circuit court "must examine the

evidence, not to decide any issue of fact, but to discover if a real issue exists."

*Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

## ANALYSIS

Lhotsky argues that Sutcliffe owed a duty, under both statutory and common law. We begin the discussion with the statutory or negligence *per se* claims, which are premised upon Kentucky Revised Statutes ("KRS") 177.106 and 179.240.

### a) Negligence *Per Se*

A negligence *per se* claim "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Lewis v. B&R Corp.*, 56 S.W.3d 432, 438 (Ky. App. 2001) (citation omitted); *see also Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. App. 2008) (citation omitted). However, the party claiming negligence *per se* must be a member of the class of persons intended to be protected by the statute, **and** the injury must be an event that the statute was designed to prevent. *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. App. 1997). Only when both requirements are affirmatively demonstrated is negligence *per se* established with the applicable regulation or statute defining the relevant standard of care. *Id.*

Not only must the statute "have been specifically intended to prevent the type of occurrence that took place, [but also] the violation must have been a

substantial factor in causing the result." *Hargis v. Baize*, 168 S.W.3d 36, 46 (Ky. 2005) (citing *Isaacs v. Smith*, 5 S.W.3d 500, 502 (Ky. 1999)).

### *KRS 177.106*

An "encroachment" is defined in KRS 177.106(1) as "any improvement of land . . . or any change from the original contour of land, that: (a) [i]s constructed, created, or implemented under, on, or over the right-of-way of a state-maintained road; and (b) [m]ay hinder or prevent use or maintenance of a road or right-of-way." Subsection (2) of KRS 177.106 provides that "[a] person shall not cause . . . or allow an encroachment to remain under, on, or over any part of the right-of-way of a state-maintained road unless that person has first obtained an encroachment permit from the Department of Highways."

The evidence was undisputed that the mailbox here was "on the edge of a paved pull-off with the near side of the mailbox located about 11 feet from the edge line" of Highway 42.[2] There was also evidence demonstrating ample room on the pull-off to allow a mail truck to access the mailbox and have clearance from the roadway. The circuit court agreed that the mailbox was situated on what might be considered the right-of-way of Highway 42, although it was well off the

---

[2] This measurement was provided by Lhotsky's expert accident reconstructionist, Kenneth Agent.

traveled portion of the road.[3]  However, the circuit court did not find that the mailbox hindered or prevented use or maintenance of the road or right-of-way. Stated another way, the court found it was not an encroachment as defined by KRS 177.106(1).  The statute clearly requires that for an "improvement" or "change" to the land to constitute an encroachment, it must also "hinder or prevent use" of the road or right-of-way.  As our Supreme Court recently emphasized, "[w]e have repeatedly stated that we 'must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy.'" *Erie Ins. Exch. v. Johnson*, 713 S.W.3d 149, 155-56 (Ky. 2025) (quoting *Samons v. Kentucky Farm Bureau Mut. Ins. Co.*, 399 S.W.3d 425, 429 (Ky. 2013)).

Lhotsky argues that by presenting expert testimony that any fixed object adjacent to a highway is "considered an encroachment," this expert opinion then presented an issue of fact for a jury.  However, Lhotsky's expert also stated that the mailbox was located *about 11 feet* from the edge line of Highway 42. Based on the evidence presented and the clear wording of KRS 177.106(1), the circuit court found that the mailbox did not meet the definition of an encroachment as it did not hinder or prevent the use or maintenance of Highway 42.

---

[3] In presenting his arguments below, Lhotsky pointed to KRS 178.025(3) which defines right-of-way as "extend[ing] to and includ[ing] the shoulders and ditch lines adjacent to [the] road[.]"  It appears the circuit court accepted that definition.

In so ruling, the circuit court also relied in part upon this Court's decision in *Estate of Wheeler v. Veal Realtors & Auctioneers, Inc.*, 997 S.W.2d 497 (Ky. App. 1999). The *Estate of Wheeler* case is instructive in several aspects as it bears many similarities to the case herein.

In *Estate of Wheeler*, William Wheeler ("Wheeler"), a fire chief, was operating the fire department water truck and lost control of the vehicle, going off the roadway and striking a tree on property owned by Willmot Preston Veal ("Veal"). *Id.* at 498. Prior to Wheeler's accident, Veal had applied for an encroachment permit, under KRS 177.106, to install a driveway to his property. Upon review of his application, the Kentucky Department of Highways ("Department") ordered Veal to remove the tree. *Estate of Wheeler*, 997 S.W.2d at 498. After Wheeler died from his injuries, his estate sued Veal under a negligence *per se* theory based on his violation of KRS 177.106, *id.*, the same statute referenced in this action. Veal moved for summary judgment arguing that his "failure to remove the tree was not the proximate cause of Wheeler's injuries or death." 997 S.W.2d at 498. The trial court granted summary judgment despite Veal's violation of statutory duties. *Id.* In affirming the trial court, this Court noted that it was undisputed that Veal violated the statute, but "in an action for damages, the violation of the statute must be the proximate cause of the injury to permit recovery." *Id.* (quoting *Peak v. Barlow Homes, Inc.*, 765 S.W.2d 577, 578

-7-

(Ky. App. 1988), *review denied* (Mar. 29, 1989)). This Court clearly and plainly explained its primary reason for upholding the grant of summary judgment: "the failure to remove the tree did not cause Wheeler's accident, as it would have occurred absent Veal's statutory violation." *Id.* at 499 (citation omitted).

Turning to the purpose of the statute, this Court held that "KRS 177.106 was not intended to prevent accidents such as Wheeler's." *Id.* Testimony from an employee with the Department revealed that the order to remove the tree was intended to "increase the sight distance for vehicles entering or exiting [Veal's] driveway and *not to increase the safety* of vehicles traveling on [the public road]." *Id.* (emphasis added).

Regarding this last point, Lhotsky argues that the circuit court erred by relying on *Estate of Wheeler* to hold that KRS 177.106 was not intended to promote safety. We disagree. First, the circuit court did not make such a finding. On the contrary, the circuit court stated the very proposition that Lhotsky argues was *dicta* in *Estate of Wheeler*: that for a negligence *per se* claim, the harm incurred must be of the type of harm the statute sought to prevent. It is not mere *dicta* that courts must look at the harm the statute was intended to prevent in assessing all negligence *per se* cases. *See Alderman*, 957 S.W.2d at 267 (stating the injury must be an event that the statute was designed to prevent). Indeed, even the violation of a statute does not necessarily create liability. The statute must

-8-

have been specifically intended to prevent the type of occurrence that took place, and the violation must have been a substantial factor in causing the result. *Isaacs*, 5 S.W.3d at 502; *Hargis*, 168 S.W.3d at 46.[4] *Estate of Wheeler* is one of only two published negligence *per se* cases arising under KRS 177.106, and it supports the judgment rendered in this matter.

We are aware of only one other published case involving the interpretation of KRS 177.106 in the context of a negligence *per se* claim. In *Peak v. Barlow Homes, Inc.*, a passenger in one vehicle was killed when it collided with another vehicle turning left into a service entrance created by an adjoining landowner. 765 S.W.2d at 578. There, the landowner created the entrance without obtaining a permit in violation of KRS 177.106. This Court held that the violation did not support a finding of negligence *per se*, as it was a condition too remote to be a proximate cause of the passenger's death. *Peak*, 765 S.W.2d at 579. Since it only furnished the occasion of the injury, the landowner was entitled to summary judgment. *Id.*

The holdings of *Estate of Wheeler* and *Peak* make clear that KRS 177.106 was not intended to expose every landowner or occupier of land to

---

[4] Similarly, we accept Lhotsky's argument that the statute has some general safety purposes, but do not accept that the Department's manual or its interpretation created a duty upon Sutcliffe. The publications upon which Lhotsky relies do not carry the force of law and do not create a duty upon the general public. *See Centre College v. Trzop*, 127 S.W.3d 562 (Ky. 2003). Again, the harm must be the type of harm that the statute was intended to prevent.

liability when drivers lose control of their vehicles, travel off the roadway, and collide with something on the property. Even where there was a violation of the statute, as found in *Estate of Wheeler* and *Peak*, it was insufficient to sustain a claim of negligence *per se* under KRS 177.106.

### KRS 179.240

Lhotsky next argues negligence *per se* based upon a violation of KRS 179.240, which provides that an "owner or occupant of land situated along a public road shall remove from the right-of-way, all obstructions . . . placed there either by himself or by his consent." The circuit court found KRS 179.240 inapplicable to this case as there was no evidence that Sutcliffe either "placed" the mailbox in the right-of-way or "consented" to its placement in the right-of-way. Moreover, aside from this lack of evidence concerning Sutcliffe, neither party was able to determine who owned the land where the mailbox was located, who placed the mailbox there, or even when the mailbox had been placed there.

As to this finding by the circuit court, Lhotsky primarily argues that there is an issue of fact as to whether Sutcliffe consented to the presence of the mailbox by allowing it to remain. However, there was no evidence that the mailbox obstructed use or maintenance of the roadway. While Sutcliffe acknowledged his use of the mailbox and his awareness of accidents on Highway 42, there was no evidence that this mailbox had ever been struck in the decades

-10-

prior to this accident. Accordingly, the circuit court resolved that dispute with its finding that the mailbox, located 11 feet off the roadway, did not constitute an "obstruction" under KRS 179.240.

As to this statute, we find only one case interpreting it in the context of a negligence *per se* claim. In *Mullins v. Luttrell*, a driver claimed that her view was obstructed by an abandoned building and line of trees on property adjacent to the intersection where she was turning, causing her to collide with an oncoming vehicle. No. 2007-CA-00096-MR, 2008 WL 162890, at *1 (Ky. App. Jan. 18, 2008) (unpublished).[5] The driver suffered injuries from the collision and filed suit against the landowners, alleging their negligence in *failing to remove or maintain* the building and trees caused her injuries. *Id.* (emphasis added). The trial court granted summary judgment on both common law and negligence *per se* claims. *Id.*

On appeal to this Court, we upheld summary judgment on the negligence *per se* claim, interpreting KRS 179.240 to only require a landowner to remove obstructions located "within" the right-of-way. *Id.* at *2. Given that a deed evidenced that the building was not included within the right-of-way, the landowners had no statutory duty to remove the building. *Id.* at *3.[6]

---

[5] Cited as persuasive, not binding, pursuant to Kentucky Rule of Appellate Procedure 41.

[6] Regarding the line of trees, this Court found the record undeveloped as the driver did not allege that the line of trees extended into the right-of-way and remanded the matter to the lower court. *Id.* at *3.

In the case *sub judice*, the circuit court likewise found that the mailbox was not located within the right-of-way, nor was it an obstruction to the use of Highway 42.

As to Lhotsky's negligence *per se* claims, we conclude that the circuit court properly applied the rather limited precedent under both of these statutory provisions and did not err as a matter of law in granting summary judgment for Sutcliffe.

### b) Common Law Claim

Lhotsky further argues on appeal that Sutcliffe owed a common law duty to him even if the statutes did not support the negligence *per se* claims. "[N]egligence claims require proof that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the plaintiff suffered a harm that was proximately caused by the breach." *Walmart, Inc. v. Reeves*, 671 S.W.3d 24, 26 (Ky. 2023) (citation omitted). To prevail on a negligence claim, the plaintiff must satisfy each element. *See Mullins v. Commonwealth Life Ins. Co.*, 839 S.W. 2d 245, 247 (Ky. 1992) (citing *Illinois Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. App. 1967) ("The absence of any one of the three elements is fatal to the claim.")). Accordingly, the questions presented are whether Sutcliffe owed a duty to Lhotsky, whether he breached that duty, *and* whether Lhotsky's injuries were proximately caused by any breach of duty.

***Duty***

The question of whether a duty exists is a question of law. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003) (citation omitted). Starting with this duty inquiry, we note that Kentucky courts and litigants often reference the "proposition that Kentucky has adopted a 'universal duty of care' under which 'every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury.'" *Howard v. Spradlin*, 562 S.W.3d 281, 286 (Ky. App. 2018) (quoting *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987), *superseded by statute as stated in DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952 (Ky. 1999)). More recently, however, our Supreme Court observed that "Kentucky does not recognize a general 'universal duty of care' that goes 'beyond the most general expression of negligence theory.'" *New Albany Main Street Properties, LLC v. Stratton*, 677 S.W.3d 345, 351 (Ky. 2023) (quoting *Jenkins v. Best*, 250 S.W.3d 680, 691 (Ky. App. 2007)). Ordinary care is defined as "such care as a reasonably prudent person would exercise under the circumstances." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (quoting *Slusher v. Brown*, 323 S.W.2d 870, 872 (Ky. 1959)). Moreover, while the duty may be labeled "universal," it is not without bounds. *See T&M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 531 (Ky. 2006). Foreseeability is one such bound. *Id.*

Accordingly, we have often held that when analyzing the existence of a duty, the foreseeability of a danger, and the injury stemming from it figure prominently in Kentucky jurisprudence. *See Lee v. Farmer's Rural Elec. Co-op Corp.*, 245 S.W.3d 209, 212 (Ky. App. 2007), *abrogated on other grounds by Walmart v. Reeves*, 671 S.W.3d 24. "[T]he scope and character of a defendant's duty is largely defined by the foreseeability of the injury[.]" *Id.* (quoting *Isaacs*, 5 S.W.3d at 502). Foreseeability is not a hindsight determination; rather it is evaluated "by viewing the facts as they reasonably appeared to the party charged with negligence[.]" *Id.* (quoting *James v. Wilson*, 95 S.W.3d 875, 891 (Ky. App. 2002)). Moreover, when deciding the nature and scope of the duty, that context requires a general, as opposed to a specific, inquiry into the foreseeability of the harm: "In determining whether an injury was foreseeable, we look to whether a reasonable person in a defendant's position would recognize undue risk to another, not whether a reasonable person recognized the specific risk to the injured party." *Id.* at 213.

While the basic criteria for negligence actions have remained consistent in Kentucky, the application of the rule of foreseeability has evolved in the last decade. *See, e.g.*, *Shelton v. Kentucky Easter Seals Soc. Inc.*, 413 S.W.3d 901, 908 (Ky. 2013) (shifting the foreseeability question from the duty analysis to the breach analysis in open and obvious cases); *see also Culp*, 663 S.W.3d at 454.

-14-

For instance, in *Walmart v. Reeves*, our Supreme Court made it clear that even business owners do not owe a "universal duty" to protect its patrons from all third-party acts. 671 S.W.3d at 29. Instead, the *Reeves* Court clarified that when determining a business's duty to its patrons, a trial court must consider whether the harm was foreseeable to the business, which then necessitates asking whether the harm "could have been anticipated by the property owner." *Id.* at 29 (citing *Napper v. Kenwood Drive-In Theatre Co.*, 310 S.W.2d 270, 271 (Ky. 1958)) ("For example, if [harm] of a sufficiently similar kind occurred sufficiently close in time to the one at issue, then the [harm] at issue would have been foreseeable."). "Such an analysis is the only means by which a landowner can justly be held accountable for harm caused by people out of their control on their property." *Id.* In *Reeves*, the plaintiff failed to submit evidence sufficiently establishing a "pattern" of the type of harm that would have triggered Walmart "to anticipate" such harm occurring at the *specific* property at issue. *Id.* Given that the harm was not foreseeable, there was no duty of reasonable care owed, and summary judgment for Walmart was appropriate. *Id.* at 29-30.

In *Commonwealth of Kentucky, Transportation Cabinet, Department of Highways v. Shadrick*, our Supreme Court reviewed a negligence claim involving a similar tragic automobile accident, ultimately affirming the ruling in favor of the defendant. 956 S.W.2d 898, 901 (Ky. 1997). The issue in *Shadrick*

-15-

concerned the liability of the Department of Highways and its duty to maintain Kentucky's highways in "a reasonably safe condition for those members of the traveling public exercising due care for their own safety." *Id.* at 900 (citations omitted). Therein, a woman lost control of her car, veered off the roadway, and collided with a dump truck parked in the right-of-way. *Id.* at 899. The woman and her unborn child died in the accident, and her estate sued the Department based on its alleged failure to remove the dump truck. *Id.* at 899.[7] Considering the Department's duty and the circumstances of the accident, our Supreme Court found "no duty imposed upon the Department with respect to the maintenance of roads to guard against *all* reasonably foreseeable and reasonably preventable harm to travelers, including those who are not exercising due care but whose lack of due care is not 'so extreme as to be unforeseeable.'" *Id.* at 900 (citation omitted).

Particularly, our Court in *Shadrick* considered the scope and nature of the Department's duty to use ordinary care to maintain the roads in a safe condition, noting that the Department would be liable for its failure to cure "defects which are obscured from the view of ordinary travelers and are so inherently dangerous as to constitute traps." *Id.* at 901 (citing *Dillingham v. Dep't*

---

[7] From the facts presented, it appeared that the dump truck, which was parked eight and a half feet from the roadway and in front of a junkyard, had been in the right-of-way for several months, and that the Department sent a notice nine months before the accident to the junkyard to clear the right-of-way, although it was not firmly established whether that notice pertained to the dump truck. *Id.*

*of Highways*, 253 S.W.2d 256 (Ky. 1952); *Falender v. City of Louisville*, 448 S.W.2d 367 (Ky. 1969)). Concluding that the dump truck's presence, eight and a half feet from the traveled portion of the roadway, did not violate any duty owed by the Department, the *Shadrick* Court made the following observations:

> The truck was in view of the traveler and not so inherently dangerous as to constitute a trap. The truck did not impede the flow of normal traffic. An obstruction in plain view of passing motorists simply does not constitute "a condition not reasonably safe." We decline to extend the law to the point of guaranteeing that every right-of-way will be completely free of all obstructions, whether permanent or transitory, for motorists who operate their vehicles into that area of the roadway. Right-of-ways on non-limited access highways were designed for maintenance and drainage, not vehicles in peril. It would be unreasonable and impractical to hold the Department responsible for the negligence of others.

*Id.* at 901 (quoting *Falender*, 448 S.W.2d at 370). Our Supreme Court determined that the Department breached no duty owed to the plaintiffs. *Id.*

To reiterate, when assessing the duty owed (or lack thereof), "[t]he most important factor . . . is foreseeability." *Hammon*, 113 S.W.3d at 89. Moreover, "[f]oreseeable risks are determined in part on what the defendant knew at the time of the alleged negligence." *Id.* at 90. Despite Lhotsky's contention in the present case that the risks were foreseeable, that contention finds no support in the evidence presented. Lhotsky argues that Sutcliffe acknowledged his awareness of other crashes occurring on Highway 42, but without more evidence regarding

-17-

the type, frequency, similarity, and proximity of those incidents, we decline to impute such awareness to extend the scope and nature of any duty owed. Simply put, there was no evidence of any foreseeable risk based on what Sutcliffe knew at the time of this crash. The undisputed evidence establishes that Patterson did not operate his vehicle in an ordinary manner as intended for Highway 42. *See Southern Bell Telephone and Telegraph Co. v. Edwards*, 70 S.W. 1, 3 (Ky. 1934). More specifically, Patterson drove under the influence of alcohol at almost 80 mph at night in torrential rain on a poorly lit road, losing control of his vehicle and swerving off the road 11 feet before colliding with the mailbox. As the circuit court recognized, under Kentucky law, an individual generally has no duty to control the conduct of a third person to prevent him from causing harm to another. *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005). Accordingly, we agree with the circuit court that Lhotsky has not provided sufficient evidence to create a genuine issue of fact as to the existence of a duty of care on Sutcliffe's part.

### *Causation*

The causation element consists of two parts: but-for causation and proximate cause. *Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016). We recognize that "literally speaking there can never be only one 'cause' of any result," but "[t]he law seeks out only the collective cause or causes for which it

-18-

lays responsibility on some person or persons." *Id.* (quoting *House v. Kellerman*, 519 S.W.2d 380, 382 (Ky. 1974)). "But-for causation requires the existence of a direct, distinct, and identifiable nexus between the defendant's breach of duty (negligence) and the plaintiff's damages such that the event would not have occurred 'but for' the defendant's negligent or wrongful conduct in breach of a duty." *Patton*, 529 S.W.3d at 730. The court has the duty to determine legal cause, *i.e.*, does the evidence as to the facts make an issue upon which the jury may reasonably differ as to whether the conduct of the defendant was a substantial factor in causing the harm? RESTATEMENT (SECOND) OF TORTS §431(1)(a).

Even though breach of a duty may be the "actual but-for cause" of the injury, proximate cause limits a defendant's liability if the breach is "too attenuated from the damages in time, place, or foreseeability[.]" *Patton*, 529 S.W.3d at 731. As with the duty analysis, proximate cause is generally considered a question of law to be determined by the Court. *Id.* In Kentucky, we measure proximate cause by "whether the injury is a natural and probable consequence of the negligent act[.]" *Ohio Cas. Ins. Co. v. Commonwealth, Dep't of Highways*, 479 S.W.2d 603, 605 (Ky. App. 1972).

In *Hammons*, *supra*, our Supreme Court held, despite a finding of a duty owed, that the placement of a mentally ill patient in an unregistered boarding home where she was assaulted by another boarder, was not the legal cause of that

patient's injuries. 113 S.W.3d at 93. Negligence is not a proximate cause when it is "'remote and only furnishe[s] the occasion of [an] injury' and, consequently, reasonable minds could not differ as to whether [defendant's breach] was a substantial factor in causing [the] injur[y.]" *Id.* (quoting *Commonwealth, Dep't of Highways v. Graham*, 410 S.W.2d 619, 620 (Ky. 1966)); *see also Estate of Wheeler*, 997 S.W.2d at 499 (finding that defendant's statutory violation was not the proximate cause of plaintiff's injuries). However, perhaps the better analysis is whether "the act created only a situation which was harmless unless acted upon by other forces out of the control of the defendant." RESTATEMENT (SECOND) OF TORTS §433.

Our causation analysis of the case at hand leads us to agree with the circuit court's grant of summary judgment for Sutcliffe. As previously discussed, Patterson did not operate his vehicle on Highway 42 in an ordinary manner. The accident and Lhotsky's injuries could not have occurred "but for" Patterson's negligence, including the fact that the vehicle first traveled at least 11 feet from the roadway at a high rate of speed prior to colliding with the mailbox. Sutcliffe's mailbox was harmless until acted upon by forces out of his control. *See id.* The circuit court heard arguments, considered briefs and the evidence, and found both that there was no breach of any duty owed **and** no establishment of proximate causation in the accident. Similar to this Court's conclusion in *Estate of Wheeler*,

-20-

the mailbox, like the tree, "only furnishe[d] the occasion of the injur[ies]." 997 S.W.2d at 499.

Finally, Lhotsky argues that the mailbox may have "aggravated" his injuries. He supported that argument with an expert reconstructionist opinion, again arguing that at least apportionment should be presented to the jury. We have addressed the failures of Lhotsky to present the basic negligence tort paradigm of duty, breach, and proximate cause sufficient to create a jury question. *See Carter v. Bullitt Host*, 471 S.W.3d 288, 298 (Ky. 2015); *Mullins*, 839 S.W.2d at 247. Because there was no duty found, no breach thereof, and no proximate cause, Lhotsky's claims against Sutcliffe fail as a matter of law, entitling him to no apportionment.

However, we also note that even Lhotsky's expert concluded that the causes of the *accident* were heavy rain, darkness with no roadway lighting, excessive speed of Patterson's vehicle, and his impairment as a driver. The mailbox, according to Lhotsky's own expert, was only a "contributing factor" to the severity of the *injuries*. This argument is based upon the discussion of comparative fault and apportionment contained within *Wemyss v. Coleman*, upon which Lhotsky relies. 729 S.W.2d 174 (Ky. 1987).[8] However, a finding of fault,

---

[8] *Wemyss*, of course, is the seminal case establishing the seatbelt defense as an affirmative defense that reduces the plaintiff's damages. *Id.* at 178.

even in the context of comparative negligence, involves first an examination of the duty and a determination of whether the duty was breached, which was not found herein. Further, as the circuit court properly noted, the seatbelt defense stems from doctrines of comparative fault and mitigation of damages – doctrines that all focus on the plaintiff's conduct, not that of the defendant. Quoting directly from the circuit court's opinion herein, "the issue in the instant case is entirely different – whether a defendant's conduct was the legally proximate cause of the accident so that it should lead to the plaintiff's recovery in the first instance." In short, there must still be a finding of fault before apportionment can be allowed. *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 74 (Ky. 2010) (citation omitted).

The subjective belief of the appealing party as to the nature of the evidence is not sufficient as affirmative proof to successfully defeat summary judgment. *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. App. 2007) (citations omitted). Rather, belief does not amount to evidence at all, and so it will not create a material issue of fact. *Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 28 (Ky. App. 2016) (citations omitted).

**CONCLUSION**

We agree with the circuit court that Sutcliffe cannot be held liable under either negligence *per se* principles nor under the common law. It simply cannot be said that the mere act of utilizing a stone mailbox that adjoined his

property and that was located on a paved pull-off section 11 feet from the roadway, can serve as the basis for the negligence claims presented herein. The judgment of the Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE: |
| --- | --- |
| Wilson W. Greene | Jeri Barclay Poppe |
| Kevin C. Burke | William B. Orberson |
| Jamie K. Neal | Paul J. Bishop |
| Louisville, Kentucky | Ryan D. Nafziger |
| | Louisville, Kentucky |